**RADIAL LIP MACHINE, INC., a corporation, Plaintiff,**

v.

**INTERNATIONAL CARBIDE CORPORATION, a corporation, and Numac Research Industries, Inc., a corporation, Defendants.**

**NUMAC RESEARCH INDUSTRIES, INC., a corporation, Counter-Plaintiff,**

v.

**RADIAL LIP MACHINE, INC., a corporation, and John L. Knight, Counter-Defendants.**

No. 73 C 2945.

United States District Court, N. D. Illinois, E. D.

Sept. 29, 1977.

Roger J. McFadden, Hubachek, Kelly, Rauch & Kirby, Chicago, Ill., for plaintiff and counter-defendants.

Alan B. Samlan, Dominik, Knechtel, Godula & Demeur, Chicago, Ill., for defendants and counter-plaintiff.

## MEMORANDUM OPINION

MARSHALL, District Judge.

This is a civil action for patent and trademark infringement and breach of contract. The parties are three corporations involved in the development, manufacture and marketing of a "radial lip" drill which is used in the metal cutting industry. Plaintiff has moved to strike defendants' demand for a jury trial.

The factual background reveals a series of corporate transactions which have transferred patent rights and created numerous contractual obligations between the parties. In the late 1960's officers of the two defendant corporations, International Carbide Corporation and Numac Research Industries, Inc.,[1] developed the radial lip drill and applied for patents on the drill, its grinding apparatus and the grinding method. Defendants then entered into various licensing agreements with other corporations. In 1969, defendants executed an agreement with Calar, a holding company. The Calar agreement basically provided that in return for 10% of Calar's stock and a share of outstanding rents and royalties from leases and licensing agreements, defendants would transfer their patent rights and those outstanding contracts and licenses to Calar. Defendants also agreed to perform certain research and technical services for Calar and received a license to make, sell and resharpen radial lip drills. Calar subsequently transferred its interest in the agreement, including the drill patents and trademark, first to its wholly owned subsidiary, Radial Lip Machine Corporation, and then to an outside corporation, Radial Lip Machine, Inc. (Radial). Radial is the plaintiff in the present action. In 1973 and 1974, defendants published advertisements in certain trade magazines using plaintiff's "radial lip" trademark and offering to sell drills with the radial lip point. Defendants have represented that they are licensed to manufacture and sell drills under plaintiff's patents.

In November, 1973, Radial filed a complaint alleging that defendants had violated its rights under federal trademark and patent laws, engaged in unfair competition, and violated certain Illinois statutes. The complaint seeks an injunction against further infringement on Radial's trademark and patents, an accounting, and damages. Defendants responded with an answer, affirmative defenses and counterclaims. After two amendments of the counterclaims, the court dismissed three of the eleven counts and struck a portion of a fourth. In the remaining seven counts, defendants request declaratory and equitable relief and damages. Specifically, defendants seek a declaratory judgment that 1) plaintiff's trademark is invalid, 2) that defendants have not infringed upon plaintiff's trademark or patents, 3) that plaintiff's patents have reverted to defendants due to a failure of consideration in the assignment agreement between the parties, 4) that plaintiff has infringed upon the reverted patents owned by the defendants, and 5) that plaintiff is obligated to pay royalties due under the terms of the assignment contract which

---

1. The predecessor of these two corporations was Radial Lip Drill Company, which is to be distinguished from two other similarly named corporations in this case, Radial Lip Machine Corporation (a subsidiary of Calar) and Radial Lip Machine, Inc. (the present plaintiff).

it assumed from Calar. Defendants also seek damages for breach of the assignment contract, rescission of the contract, an accounting of unpaid royalties due, attorneys' fees, and damages for the fraudulent conduct of one of Radial's corporate officers who is joined as a counter-defendant. Defendants demand a jury trial on all issues pleaded in its answer and counterclaims.

 In attacking defendants' right to a jury trial, plaintiff makes a short argument that all the issues raised and relief requested sought are "essentially equitable in nature." The Supreme Court has explicitly rejected such an attempt to merge various claims in a pleading under one "equitable" label. In *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44, the owner of the "Dairy Queen" trademark brought an action for breach of a licensing contract and for trademark infringement. Plaintiff sought to enjoin defendants from using the trademark in their business and sought an accounting of damages for past use of the trademark. Defendant's answer demanded a jury trial. In reversing the denial of a jury trial, the Court held that the demand for an accounting, whether characterized as a contract claim, a trademark infringement claim, or a hybrid of both, raised legal issues on which there was a right to a jury trial. Under *Dairy Queen* principles, the right to a jury trial cannot be obscured by the fact that the action is primarily equitable in nature. If the action combines legal and equitable claims, the parties are entitled to a jury determination of any factual questions raised by the legal issues in the case. In the present action those legal issues are numerous. Plaintiff in its complaint seeks damages for patent and trademark infringement. In their counterclaim, defendants demand damages for breach of contract and fraud. They also seek the payment of royalties which are unpaid. Furthermore, they present several grounds for declaratory relief which give rise to a jury claim since there would have been such a right if the issue had arisen in a coercive action. Therefore, defendants are entitled to a jury trial on all factual issues common to the legal and equitable claims.

The major thrust of plaintiff's motion to strike is that because of the complex legal and factual framework of the case, a bench trial would be a fairer and more expeditious method of adjudication than a jury trial. To support its contention that a federal court may properly inquire into the practical capabilities of juries to handle complex litigation, plaintiff relies virtually exclusively on the following passage and footnote from *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729:

> The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.[10]
>
> [10] As our cases indicate, the "legal" nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries.

*Ross* thus sets forth three factors which determine the susceptibility of a claim to a trial by jury. Plaintiff focuses on the last of these factors, arguing that a jury is ill-equipped to handle the complicated commercial transactions involved in this case.

The meaning of the *Ross* footnote is central to plaintiff's arguments. The Court clearly directed federal courts to inquire into the competence of juries to handle different types of issues. Its opinion is less than clear, however, concerning the scope and purpose of such an inquiry. We see two possible interpretations. First, the Court may have intended federal courts to make such an inquiry only at the threshold stage where the issue is whether a right to jury trial exists for the entire class of claims asserted by the parties. For example, in *Ross* the Court held that the Seventh Amendment applies to the determination of legal issues in stockholder's derivative suits. Once the Court had applied its three-pronged analysis to characterize this class of claims as creating a right to a jury, all future cases with the same issues would trigger the same result. After the "legal" nature of an issue is decided on a general basis, individual deviations in the complexity of the case would be irrelevant. A

second interpretation of the *Ross* footnote is that the practical limitations of juries operate as a general exception to the Seventh Amendment. Whenever the legal and factual complexity of a case makes it unwieldy for a jury to handle, the court has the discretion to strike the jury demand and hold a bench trial. This principle would apply even though the parties would normally be entitled to a jury trial in that kind of case. Jury competence would be an open question in every lawsuit, and would depend on the complexity of the specific problems presented rather than on the general nature of the legal issues involved.

Plaintiff urges us to accept the second interpretation. As far as we can discover, only one other court has done so. In *In Re Boise Cascade Securities Litigation,* 420 F.Supp. 99 (W.D.Wash.1976), the court held that the legal difficulty and factual complexity of a civil action for securities fraud warranted excision of plaintiffs' jury demand. The court explicitly rested its decision on the third *Ross* criterion, holding that the footnote was "of constitutional dimension" and "must be seen as a limitation to or interpretation of the Seventh Amendment." 420 F.Supp. at 105. In addition, the court relied on the Fifth and Fourteenth Amendment concepts of fairness to imply the need for "an impartial and capable fact finder." Id. at 104. In applying these standards of complexity and fairness, the court cited the difficulty of proving a different measure of reliance for each plaintiff, the presence of unique and difficult accounting concepts, the possibility of jury prejudice against the defendants due to their $50 million settlement of related claims in another lawsuit, and the necessity of examining corporate financial records spanning five years and involving more than a billion dollars. More than 900,000 documents had been produced, and the esti-

mated trial time was four to six months. The court was concerned that a jury would be incapable of deciding the case fairly. It emphasized that the lengthy trial would require the selection of non-employed persons unfamiliar with the contemporary business environment and that the jury lacked the procedural tools used by a judge to manage, organize and review large amounts of evidentiary material. Relying on this decision, plaintiff contends that a jury trial should be avoided if the complexity of the litigation, viewed as a whole, exceeds the practical competence of a jury.[2]

We cannot read the *Ross* and *Boise* decisions as creating such a broad exception to the Seventh Amendment. We believe, in accordance with the first interpretation of *Ross* described above, that federal courts should only inquire into the competence of juries to decide "legal" issues when they initially examine the nature of the issues raised by a claim. The three *Ross* criteria are guides for determining whether a claim typically has a sufficient quantum of legal elements so that it must be tried to a jury. *See Rogers v. Loether,* 467 F.2d 1110, 1118 (7th Cir. 1972), *aff'd sub nom Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). The inquiry is a generic one, directed toward classifying a group of claims. Thus, the historical portion of the *Ross* test evaluates the entire line of judicial precedents to determine the traditional characterization of a particular claim. Once the court finds that the nature of an issue is basically legal, the right to a jury trial exists for that entire class of claims. The portion of the *Ross* test which weighs the practical abilities and limitations of juries contemplates a general analysis of the problems typically presented by those claims, not a specific case-by-case analysis of the complexity of the litigation.

---

**2.** Plaintiff also cites a number of decisions in which a court has exercised its discretion and refused to grant a jury trial under Rule 39(b). *See, e. g., General Tire & Rubber Co. v. Watkins,* 331 F.2d 192 (4th Cir. 1964). Although these decisions list the complexity and difficulty of commercial litigation as a factor militating against a jury trial, they are inapposite because in all the cases a jury demand was not timely made under Rule 38(b). If a jury demand is untimely, the court can exercise its discretion to order a jury trial under Rule 39(b). In the present case, the jury demand has been timely made and the court's discretion is therefore not invoked.

Otherwise, the courts would be forced to apply an unmanageable standard of complexity in every case before them. The likely result would be a dilution of the right to jury trial. Finally, in arguing for an exception based on the complexity of the entire litigation, plaintiff distorts the application of the *Ross* test. The test is used to characterize a single issue as legal or equitable. It does not analyze the entire framework of the lawsuit. The focus is a narrow one. Complex lawsuits with multiple claims and parties must be broken down into their constituent parts. If any legal cause is apparent, the right to a jury trial exists. The presence of a maze of other equitable claims in the litigation cannot obliterate defendants' right to a jury.

Plaintiff is actually arguing for the application of a different principle. It implies that in an extraordinary case, the complexity of the issues may be so great that only a court of equity may unravel them, thus signifying an inadequate remedy at law. This exception was recognized in *Dairy Queen, supra,* 369 U.S. at 478, 82 S.Ct. at 900:

> The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the "accounts between the parties" are of such a "complicated nature" that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met.

This exception is a very narrow one. The test for the availability of equity jurisdiction remains whether the plaintiff has an adequate *remedy* at law. Hence, equity jurisdiction is available if the accounts between the parties are too complicated for a jury adequately to assess *damages.* Equity jurisdiction may not be invoked, however, because of the complexity and difficulty of issues of liability as distinguished from the complexity of assigning an adequate remedy. *Tights, Inc. v. Stanley,* 441 F.2d 336 (4th Cir. 1971). Mere complication of facts alone and difficulty of proof are not a basis for equity jurisdiction. *Curriden v. Middleton,* 232 U.S. 633, 636, 34 S.Ct. 458, 58 L.Ed. 765. In the instant case, plaintiff has not identified any complex accounting issues which could justify equitable jurisdiction.[3] Plaintiff only analyzes the factual and liability issues presented, and therefore has not made the exceptional showing which *Dairy Queen* requires.

Even if we assume that resort to an equitable accounting could be justified by the complexity of the liability issues alone, we are not convinced that this case surpasses the limits of jury competence. Although a large number of corporate transactions have occurred, there are really only two competing corporations involved in this suit. The length of the trial is estimated to be only three weeks. We have not been inundated with a large number of documents. Finally, the technical difficulties of the radial lip concept will not be a major obstacle in the litigation because the validity of the patents is undisputed.

In conclusion, we agree with the sentiments expressed by Judge Sobeloff in *Tights, Inc. v. Stanley, supra* at 344:

> We are neither oblivious of nor insensitive to the contentions that the jury trial is a cumbersome and unwieldy mechanism of dealing with the complex factual settings and intricate legal framework of patent cases. We cannot dispute the as-

---

**3.** Although the *Boise* court did not rest its decision on this ground, the facts of the case fit clearly within the *Dairy Queen* exception for an equitable accounting. The court noted that dif-

ficult accounting concepts were at issue and that accounting experts would have to examine five years of financial records involving more than a billion dollars of assets and liabilities.

sertion that the trial of all patent cases to juries would add significantly to the congestion of district court dockets. However, we are compelled to echo the words of Judge Frank, speaking for the Second Circuit in *Bereslavsky v. Caffey*, 161 F.2d 499, 500:

> It is of no moment that we believe that trial by a jury of a patent suit is usually undesirable, since it is well settled that such a trial may be demanded where the sole claim is for money, if the demand be timely, as we hold it was here.

*Beacon Theatres* and *Dairy Queen* have dated this statement of the law, but to the benefit of Tights, since it is now "well settled that such a trial may be demanded" where the claim for money is joined with a claim for injunctive relief.

Plaintiff's motion to strike defendants' jury demand is denied.