A.G. BECKER–KIPNIS & CO., Plaintiff,

v.

LETTERMAN COMMODITIES, INC. and Letterman Transaction Services, Inc., Defendants.

No. 80 C 5728.

United States District Court, N.D. Illinois, E.D.

Nov. 17, 1982.

Thomas P. Luning, Frederick J. Sperling, Schiff, Hardin & Waite, Chicago, Ill., for plaintiff.

Terry F. Moritz, Linda K. Stanwood, Goldberg & Kohn, P.C., Chicago, Ill., for Letterman Transaction Services.

Merle L. Royce, II, Chicago, Ill., for Letterman Commodities, Inc.

## MEMORANDUM OPINION

WILL, Senior District Judge.

A.G. Becker-Kipnis & Co. (Becker-Kipnis) brings this action for breach of a commodities brokerage account agreement (the agreement) against Letterman Commodities, Inc. (Letterman Commodities) and against Letterman Commodities' parent corporation, Letterman Transaction Services, Inc. (Letterman Transaction). Our jurisdiction rests upon diversity of citizenship.

Becker-Kipnis seeks compensation for damages which allegedly resulted from a breach of the agreement, and for its costs and attorneys' fees incurred in prosecuting this action. Becker-Kipnis timely demanded a jury trial, and the defendants now argue that any claim for costs and attorneys' fees (to which Becker-Kipnis may be entitled) is one for the jury. Becker-Kipnis opposes the motion, and contends that the only questions for the jury are liability and the claim for damages which resulted from the alleged breach of the agreement. Becker-Kipnis argues that an assessment of costs and attorneys' fees is a determination for the Court in the event that the jury decides in Becker-Kipnis' favor on the question of compensatory damages. For the reasons stated below, we agree with Becker-Kipnis that a jury trial is not available for the determination of costs and attorneys' fees.

### I.

Familiarity with the underlying facts will be helpful to an understanding of the remainder of this opinion. We have taken the following description of the facts from the parties' Stipulation of Uncontested Facts.

Under the agreement executed on behalf of Letterman Commodities and Becker-Kipnis in November of 1979, Letterman Commodities obtained customers who wished to trade commodities futures contracts and helped to open accounts for them with

Becker-Kipnis. These customers gave their trading instructions to Dan Osborn and Ron Rooy, agents of Letterman Commodities, in Irvine, California, who would call Becker-Kipnis in Chicago to place the customers' orders. Becker-Kipnis would then execute the orders.

On July 3, 1980, Dan Osborn obtained the necessary signed forms from a customer, Dennis Sciotto, to open a commodity futures trading account with Becker-Kipnis, and, on July 7, 1980, Dan Osborn approved the opening of Sciotto's account. Thereafter, Dan Osborn and Ron Rooy transmitted orders to Becker-Kipnis for Sciotto's account and Becker-Kipnis executed trades in Sciotto's account every business day from July 8 through July 28, 1980.

On July 24, 1980, Dan Osborn or Ron Rooy transmitted orders to Becker-Kipnis for, and Becker-Kipnis purchased, 50 soybean futures contracts on the Chicago Board of Trade for Sciotto's account. As a result of these purchases, Sciotto was required under the schedule instituted at Letterman Commodities' request to make an initial margin deposit of $112,500.00 with Becker-Kipnis.

On the afternoon of July 24, 1980, after the purchase of the 50 soybean futures contracts for Sciotto's account, Dan Osborn advised Larry Zemkewicz, an employee of Becker-Kipnis, that Sciotto had told him that $150,000.00 was being wired to Becker-Kipnis to satisfy the margin requirement on Sciotto's account. On the morning of July 25, 1980, Dan Osborn of Letterman Commodities advised Mark Aleksiewicz and Bill Figiel, employees of Becker-Kipnis, that Sciotto had told him that a wire transfer in the amount of $150,000.00 was being sent to Becker-Kipnis to satisfy the margin requirement for Sciotto's account. Also on the morning of July 25, 1980, Dan Osborn or Ron Rooy transmitted orders to Becker-Kipnis for, and Becker-Kipnis purchased, an additional 40 soybean futures contracts on the Chicago Board of Trade for Sciotto's account.

Becker-Kipnis did not receive any funds to satisfy the margin requirement for Sciot-to's account. On July 25, 1980, the 40 soybean futures contracts purchased earlier that day were sold at a loss of $27,500.00. On July 28, 1980, the 50 soybean futures contracts purchased on July 24, 1980, were sold at a loss of $61,625.00. The deficit in Sciotto's account, after applying the equity in the account against the losses incurred on the soybean futures contracts, is $83,563.60. Letterman Commodities has sued Sciotto, but has not recovered anything from him. Under the arrangements between Becker-Kipnis and Letterman Commodities, from time to time Becker-Kipnis would make payments to Letterman Commodities of commissions and interest. Becker-Kipnis retains $10,151.90 in such commissions and interest.

## II.

We deal first with a preliminary question which is raised (but not discussed at any length) in the parties' memoranda. That question is whether Becker-Kipnis is entitled to recover from the defendants its costs and attorneys' fees at all, if it prevails on its underlying damages claim. Obviously, if we answer that question in the negative, the issue whether recovery of costs and attorneys' fees presents a jury question will be moot.

 The general rule in American litigation is that the prevailing party is not entitled to collect reasonable attorneys' fees from the loser, absent either a statutory or a contractual provision for recovery of attorneys' fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Smoot v. Fox,* 353 F.2d 830, 832 (6th Cir.1965); D. Dobbs, Remedies § 3.8 at 194 (1973); *but see Empire State Ins. Co. v. Chafetz,* 302 F.2d 828 (5th Cir.1962) (noting that a Florida statute which made the setting of attorneys' fees a decision for the trial judge had superseded an earlier statute which allowed the jury to assess a reasonable sum for attorneys' fees in common law actions, and upholding the newer statute against a Seventh Amendment challenge). In their initial brief, the defendants assert that Beck-

er-Kipnis bases its claim for attorneys' fees and costs upon Paragraph 14 of the agreement between Becker-Kipnis and Letterman Commodities. The defendants quote that provision as stating:

> We agree to fully indemnify you and to hold you harmless for all losses, claims, actions and expenses, including your attorneys' fees and costs, which you may incur by reason of . . . the failure of any Customer promptly to pay any amount due to you in such customer's account.

Defendants' Initial Memorandum at 2. Becker-Kipnis, in its amended complaint, also bases its claims, including the claim for attorneys' fees and costs, solely upon the provision which states that the "failure of any Customer promptly to pay any amount due" will be a basis for placing liability on Letterman Commodities. *See* Amended Complaint at ¶ 13.

 Apparently, the defendants' disagreement with the assumption that Becker-Kipnis may recover its costs and attorneys' fees incurred in litigating this action is founded on the fact that Letterman Commodities' relationship with Becker-Kipnis was not that of a "customer" but was instead that of a broker, *i.e.*, a supplier of customers. Under such a theory, while the defendants might be liable to Becker-Kipnis for the latter's costs and attorneys' fees incurred in an action brought by Becker-Kipnis against a "customer," Becker-Kipnis could not recover for any costs and fees incurred as a result of an action against the broker itself. The suit against Sciotto was brought by Letterman Commodities rather than by Becker-Kipnis; the costs and fees which Becker-Kipnis seeks here appear to have been incurred entirely during the course of its lawsuit against these defendants. No doubt those expenses continue to accrue.

It should be noted, however, that Paragraph 14 provides for indemnification for all losses and expenses, including attorneys' fees and costs incurred by Becker-Kipnis as a result of the failure of any customer to pay any amount due to Becker-Kipnis in the customer's account. It does not limit the attorneys' fees and costs to suits against customers. Given the underlying indemnification obligation of Letterman Commodities, the reimbursement liability for attorneys' fees and costs clearly arises from the "failure of any Customer [here Sciotto] promptly to pay any amount due" to Becker-Kipnis in the customer's account.

We need not rest a decision that Becker-Kipnis is entitled to seek its costs and fees (incurred during this lawsuit) solely upon such an analysis, however, because Paragraph 14 of the agreement provides additional bases upon which Letterman Commodities would be liable for damages, including attorneys' fees and costs, suffered by Becker-Kipnis. A less heavily edited recitation of Paragraph 14 than that set forth in defendants' brief reads as follows:

> We agree to fully indemnify you and to hold you harmless for all losses, claims, actions and expenses, including your attorneys' fees and costs, which you may incur by reason of (a) your compliance with any instruction or order received by you from any Customer or us in respect of any Account, (b) our failure adequately to supervise any Account, . . . or (h) . . . the failure of any Customer promptly to pay any amount due to you in such Customer's Account.

While the wording of subsection (h) may arguably be too narrow to apply to costs and attorneys' fees which Becker-Kipnis incurs in a lawsuit against these defendants, those losses, costs and fees bear a direct nexus to "compliance with any instruction or order received" and to any "failure adequately to supervise any Account."

We conclude, therefore, that the agreement between Becker-Kipnis and Letterman Commodities provides several bases for Becker-Kipnis' claim that it is entitled to recover any costs and attorneys' fees incurred in its action against these defendants.

We turn now to whether Becker-Kipnis' claim for costs and attorneys' fees incurred in its pursuit of these defendants is an issue for the jury.

### III.

█ The right to a jury trial in the federal courts is a matter of federal law even in cases where jurisdiction rests upon diversity of citizenship. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (per curiam). The Seventh Amendment to the United States Constitution provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The Supreme Court has consistently construed the Seventh Amendment liberally so as to extend its application beyond the core of actions for which a jury was available when the Seventh Amendment was adopted in 1791. The Seventh Amendment applies to all actions in which "legal" as distinguished from "equitable" rights are raised. *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Parsons v. Bedford,* 3 Pet. (28 U.S.) 433, 7 L.Ed. 732 (1830).

█ As this case demonstrates, whether an issue is classified as "legal" or "equitable" is not always an easy determination. At its most basic level, the distinction between "legal" and "equitable" issues refers to the pre-merger custom, *i.e.,* before the adoption (in 1938) of the Federal Rules of Civil Procedure, in which some claims—"legal" in nature—were tried in the Law Courts while others—equitable in nature— were tried in the Equity Courts. Reference to the "pre-merger custom" is not very helpful in this instance (for, as indicated, the general rule in this country is that the prevailing party is not entitled to recoup his attorneys' fees from his opponent), but suggests that, when the issue did arise, it was decided by the court rather than by a jury. Recovery of costs and attorneys' fees has been permitted for centuries in England, though such recovery is pursuant to statutory authorization and is a matter always left to the discretion of the court. *Alyeska,* 421 U.S. at 247, 95 S.Ct. at 1616.

Where modern American statutes provide for recovery of attorneys' fees, their word-ing usually implies that the decision is one for the court, after the underlying claims have been determined. *See, e.g., Cleverly v. Western Electric Co.,* 69 F.R.D. 348, 352 (W.D.Mo.1975); *Mabee v. Nurseryland Garden Centers, Inc.,* 88 Cal.App.3d 420, 152 Cal.Rptr. 31, 34 (1979); *see also, Vander Missen v. Kellogg-Citizens National Bank of Green Bay,* 83 F.R.D. 206, 207–08 (E.D. Wis.1979). However, a federal statutory provision that a claim otherwise triable to a jury must be determined by the court would, absent exceptional circumstances, such as suits against the government, violate the Seventh Amendment. *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (dictum).

There is some authority for the broad proposition that any claim for damages or for monetary relief is "legal" in nature and hence carries the right to a jury trial. *See Mabee,* 152 Cal.Rptr. at 34 (dictum); D. Dobbs, Remedies § 2.6 at 77–78 (1973) (discussing implications of *Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962)). We note also that some cases have implied that the right to a jury trial extends to a claim for attorneys' fees incurred during ongoing litigation. These cases typically involve several issues, one of which is a claim for attorneys' fees. They suggest the possibility that a jury trial is available for the claim of attorneys' fees by finding the right to a jury applicable to the underlying claims but omitting further reference to the claim for attorneys' fees. *See, e.g., NSC International Corp. v. Ryan,* 531 F.Supp. 362 (N.D.Ill.1981); *Ocean Accident & Guaranty Corp. v. Heald,* 30 F.Supp. 991 (E.D.Pa.1939). More often, however, courts which have concluded that the right to a jury trial is applicable to an underlying claim have noted that the demanding party either did not demand a jury trial for its claim of attorneys' fees or had conceded the inapplicability of the right to a jury on that claim. *See, e.g., Sibley v. Fulton DeKalb Collection Service,* 677 F.2d 830, 834 n. 5 (11th Cir.1982); *Crane Co. v. American*

*Standard Co.,* 490 F.2d 332, 344 n. 16 (2d Cir.1973); *Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 788 (D.Md.1978).

*Simler v. Conner,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (per curiam), on which the defendants rely for the proposition that a claim for attorneys' fees is necessarily a "legal" issue, is not applicable here. *Simler* was an action involving a claim by an attorney against his former client for money owed by the client for past legal services. In that context, the Supreme Court stated that *Simler* presented "in its basic character a suit to determine and adjudicate the amount of fees owing to a lawyer by a client under a contingent fee retainer contract, a traditionally 'legal' action." 372 U.S. at 223, 83 S.Ct. at 611. In contrast to *Simler,* where a claim for attorneys' fees was no different from any other action whose basis was a defendant's refusal to pay for past services, the plaintiff here seeks the value of ongoing legal services including those incurred or to be incurred in this suit. In order for *Simler* to control the outcome of this motion, *Simler* would have to have addressed the question of whether the attorney in that case could present to the jury evidence of his costs (and the reasonable value of his time) incurred in seeking payment for the underlying debt which his client owed him. *Simler* did not present the issue of such "open-ended" attorneys' fees.

The only case we have found which squarely addresses the question of whether the right to a jury trial applies to a determination of the attorneys' fees incurred and to be incurred in a case whose underlying issues are also to be tried to a jury, *Empire State Ins. Co. v. Chafetz,* 302 F.2d 828 (5th Cir.1962), did so in the context of a state statute governing actions based on insurance policies. As indicated, the Fifth Circuit upheld, against a Seventh Amendment challenge, a statutory change which transferred the assessment of attorneys' fees from the jury to the trial judge. 302 F.2d

at 830. The Fifth Circuit based its decision in *Chafetz* upon its determination that there was no common law right to attorneys' fees and that a statutory grant of attorneys' fees incident to prevailing on a cause of action does not resemble a suit at common law. Though *Chafetz* is distinguishable from cases in which the right to recover one's attorneys' fees is based on contract and though it does not reflect the subtleties introduced into Seventh Amendment analysis by *Dairy Queen, supra,* and its progeny, *Chafetz* offers some support for the conclusion that a party does not have a constitutional right to have a jury determine the attorneys' fees that may be awarded to the prevailing party.

Applying the Supreme Court's somewhat more complex test for distinguishing between legal and equitable issues only reinforces the conclusion that a party's claim for costs and attorneys' fees from his opponent is equitable rather than legal. In *Ross v. Bernhard, supra,* the Supreme Court stated:

> The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.

In a footnote to that sentence, the Court added:

> As our cases indicate, the "legal" nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries.

396 U.S. 531, 538 & n. 10, 90 S.Ct. 733, 738 & n. 10, 24 L.Ed.2d 729 (1970).[1] As indicated, what little evidence of the pre-merger custom exists suggests that attorneys' fees and costs have traditionally been viewed as a determination to be made by the court rather than by a jury.

The second criterion, the nature of "the remedy sought" does not lead us to conclude that recovery of costs and attorneys' fees should necessarily be viewed as "legal"

---

1. Exactly what the Supreme Court meant by what has become known as the "*Ross* footnote" has been a matter of considerable speculation during the past decade. *See, e.g., Radial Lip Machine, Inc. v. International Carbide Corp.,* 76 F.R.D. 224, 226–28 (N.D.Ill.1977).

relief. The fact that a claim for attorneys' fees can be characterized as one for monetary damages does not compel its classification as a "legal" remedy.

> We need not, and do not, go so far as to say that any award of monetary relief must necessarily be "legal" relief.

*Curtis v. Loether,* 415 U.S. at 196, 94 S.Ct. at 1009.

For example, a claim for back pay (in a Title VII action) is restitutionary in nature and hence "an integral part of an equitable remedy" even though it can be styled as a claim for monetary relief. *Curtis v. Loether,* 415 U.S. at 196–97, 94 S.Ct. at 1009–10. We need not pin the label "restitutionary" (as opposed to "compensatory") upon Becker-Kipnis' claim for costs and attorneys' fees under the second prong of the *Ross* footnote although it is a claim for reimbursement and in that sense more "restitutionary" than a claim for back pay. It suffices that the claim does not lend itself to easy categorization under either label and that the mere fact that a claim can be styled as one for monetary relief does not require that it be tried to a jury.

A determination that the third prong of the *Ross* footnote (which refers to "the practical abilities and limitations of juries") suggests a "complexity" exception to the Seventh Amendment, *see Radial Lip,* 76 F.R.D. at 226–28; *In re Boise Cascade Securities Litigation,* 420 F.Supp. 99, 104–05 (W.D.Wash.1976), is not necessary to a decision that the defendants are not entitled to have Becker-Kipnis' claim for costs and attorneys' fees sent to the jury. We agree with Becker-Kipnis that requiring the parties to submit evidence on attorneys' fees before the "prevailing party" has been ascertained and before the services have been completed raises substantial practical difficulties. Bifurcating the proceedings under Rule 42(b), Fed.R.Civ.P., might make such an approach more manageable though it would still require a determination of the value of future services. But we find no support for the proposition that, because it would not be impossible to present a particular issue to the jury, the third prong of the

*Ross* footnote mandates such presentation if one of the parties demands it.

Even if we were to conclude that Becker-Kipnis' claim for costs and attorneys' fees is "legal" and hence triable (at least in theory) to a jury, the practical difficulties inherent in presenting that claim to the jury suggest that this case could be deemed an instance "where there is obviously ... functional justification for denying the jury trial right." *Curtis v. Loether,* 415 U.S. at 195, 94 S.Ct. at 1008. In *Curtis,* the Supreme Court noted that "the Seventh Amendment is generally inapplicable in administrative proceedings," *id.* at 194, 94 S.Ct. at 1008, *citing NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1973), as an example of a procedure for which a "functional justification for denying the jury trial right" exists. Arguably, any "functional justification" exception to the Seventh Amendment ought to be limited to specialized systems of process (administrative law and bankruptcy are ready examples) and not applied to particular issues that arise within standard civil litigation. Like the *Ross* footnote's "complexity" exception, a "functional justification" exception is troublesome in that its boundaries are difficult to define. While we do not rely on *Curtis'* suggestion that a "functional justification" exception to the right to a jury trial exists, such an argument is a further obstacle to the defendants' assertion that they are entitled to a jury on Becker-Kipnis' claim for costs and attorneys' fees. It seems obvious that the determination of what attorneys' fees and costs Becker-Kipnis may be entitled to should be made by the Court after the services have been performed; and the amount of compensatory damages to which they may be entitled has been determined.

## IV.

For the reasons stated above, we conclude that the Seventh Amendment does not require that Becker-Kipnis' claim for costs and attorneys' fees be tried to a jury. An appropriate order will enter.