Raymond J. DONOVAN, Secretary of Labor, Plaintiff,

v.

Loran W. ROBBINS, et al., Defendants.

Raymond J. DONOVAN, Secretary of Labor, Plaintiff,

v.

Allen M. DORFMAN, et al., Defendants.

Nos. 78 C 4075, 82 C 7951.

United States District Court, N.D. Illinois, E.D.

Jan. 31, 1984.

David H. Feldman, U.S. Dept. of Labor, Assoc. Sol. for Spec. Lit.; Richard O. Patterson, Supervisory Trial Atty., Spec. Lit. Div., William Zuckerman, Lynette Diehl-Lang, Virginia S. Lewey, Marian S. Block, Washington, D.C., Edward J. Moran, Asst. U.S. Atty., Leonard Grossman, Kevin Koplin, Chicago, Ill., for the Secretary.

Richard J. Braun, Michael Miller, Nashville, Tenn., for defendant John F. Spickerman.

Edward L. Foote, R. Mark McCareins, Winston & Strawn, Albert Jenner, Michael Rovell, Jenner & Block, Chicago, Ill., for Amalgamated Ins. Agency Services, Inc., Federal Computer Systems, Inc., Health Plan Consultants Service, Inc., Prescription Plan, Inc., Estate of Allen M. Dorfman.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiff Secretary of Labor (the Secretary) has moved to strike the jury demand which certain defendants (hereinafter to be collectively referred to as "Amalgamated") filed in both *Donovan v. Robbins,* 78 C 4075 (*Robbins*) and *Donovan v. Dorfman,* 82 C 7951 (*Dorfman*) on February 18, 1983 and to strike the August 2, 1983 jury demand of defendant John F. Spickerman (Spickerman) in *Robbins.* For the reasons hereinafter stated, we conclude that there is no basis for a jury trial of the issues raised in the Second Amended Complaint in *Robbins* and the Amended Complaint in *Dorfman.* We further conclude, however, that Amalgamated, by its alleged failure to file a supplemental jury demand with respect to issues raised in its March 2, 1983 cross claims against the Central States, Southeast and Southwest Areas Health and Welfare Fund (the Fund) and the Fund's current trustees, has not waived its right to a jury trial as to those issues.

### The Secretary's Cause of Action

The Secretary has brought these actions under the Employee Retirement Income Security Act of 1974 (ERISA) to challenge a series of contracts between the Fund and Amalgamated for provision of claims processing services and the course of performance under those agreements. Jurisdiction of both actions is predicated on Section 502(e) of ERISA, 29 U.S.C. § 1132(e). The Secretary seeks relief under section 502(a)(2) and (5) of ERISA, 29 U.S.C. § 1132(a)(2) and (5).

*Robbins* was originally brought in October 1978 to enjoin a then new three year contract between Amalgamated and the Fund. The Secretary filed his Second Amended Complaint, which is in issue here, on February 10, 1983, alleging that the contract relations between Amalgamated and the Fund violated section 406 of ERISA, 29 U.S.C. § 1106, in that it constituted a prohibited transaction between an employment benefit plan and parties in interest. The Secretary accused Spickerman, a former trustee of the Fund, of having breached his statutorily defined fiduciary duties to the Fund in connection with the Amalgamated contract. The Secretary joined Amalgamated on the theory that it participated in and aided and abetted the fiduciary violations with the aim of benefiting from improperly transferred Fund assets.

The Secretary brought the *Dorfman* action in late 1982 to challenge certain subsequent aspects of the continuing relationship between Amalgamated and the Fund. The original *Dorfman* complaint alleged that the Fund had improperly paid Amalgamated fees for certain services in excess of what was required by the contract governing the parties' dealings and that a 1980 modification of that contract had been improper. In *Dorfman* as well, Amalgamated was joined as an alleged ERISA fiduciary and party in interest that had participated in, aided and abetted and benefited from various ERISA violations. After entry on February 1, 1983 of an Agreed Order to govern the subsequent conduct of this litigation, the Secretary amended the *Dorfman* complaint to add a Count VII challenging the reasonableness of a proposed $10.75 million price for transfer to

the Fund of the Amalgamated claims processing assets.[1]

The Secretary's prayers for relief in both the *Robbins* and the *Dorfman* complaints are comprehensive: he seeks an accounting of the sums transferred from the Fund to Amalgamated; restitution to the Fund of allegedly improper and excessive payments made to Amalgamated, ostensibly for claims processing services; injunctive relief against future ERISA violations and against the Fund's continued relationship with certain individual defendants.

As noted, Amalgamated filed its jury demand in both *Robbins* and *Dorfman* on February 18, 1983. Spickerman's jury demand in *Robbins* was filed on August 2, 1983. Amalgamated, in cross claims filed on March 2, 1983, allegedly subsequent to its jury demand, contends that the current trustees have breached a contractual obligation to defend any action challenging the Amalgamated claims processing contract as amended. It also contends that Amalgamated had an implied contract for reimbursement for certain claims processing services for which it never received compensation. These cross claims, both of which were filed in *Dorfman*, do not concern Spickerman.

### ERISA and the Right to Jury Trial

In accordance with the well established principle that constitutional questions are to be avoided where possible, we turn initially to the question whether ERISA creates a statutory right to jury trial. *See Pernell v. Southall Realty*, 416 U.S. 363, 365, 94 S.Ct. 1723, 1724, 40 L.Ed.2d 198 (1974). We have previously ruled that the ancient principle that the Chancellor will not award an equitable remedy where legal relief is adequate to accomplish justice between the parties does apply in the ERISA setting. *See* Memorandum Opinion of October 5, 1983 at 12–13; Memorandum Opinion of December 1, 1983 at 2–4. We necessarily recognized that Section 409 of ERISA, 29 U.S.C. § 1109, authorizes legal relief for an appropriate party under appro-

priate circumstances in an ERISA action. We affirmed that we have discretion under ERISA to refuse to implement injunctive or other equitable relief where a legal remedy would be adequate.

■ ERISA is silent with respect to the mode of trial to be had in actions authorized by any of its sections. *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), nonetheless may imply that a jury trial would be required in an action for legal relief pursuant to section 409 of ERISA, 29 U.S.C. § 1109. Since legal relief is authorized by ERISA, we infer that Congress intended thereby to provide for a jury trial in an action under ERISA to secure a legal remedy. *See id.* at 584–85, 98 S.Ct. at 872.

■ Unlike *Lorillard,* in which the relief sought included liquidated damages, the Secretary here styles his complaints in *Robbins* and *Dorfman* as being for equitable relief exclusively. *See* Second Amended Complaint in *Robbins* ¶ 1; Amended Complaint in *Dorfman* ¶ 1. If in actuality the Secretary is only suing for an equitable remedy, which section 409 of ERISA, 29 U.S.C. § 1109, undisputedly also authorizes, then it follows from *Lorillard* that Congress did not intend that there be a jury trial in this case. *Cf. Bugher v. Feightner,* 722 F.2d 1356 at 1358 (7th Cir. 1983) (no Congressional intent to create jury trial right in action brought under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), which permits only an equitable remedy). Our conclusion with respect to the absence of a statutory entitlement to a jury trial of the issues raised in the Secretary's complaints in no way pretermits our earlier-recognized obligation to decline to award an equitable remedy where a complaint at law would have been adequate.

### The Seventh Amendment Jury Trial Rights of Spickerman and Amalgamated

■ The Seventh Amendment requires that in virtually all actions at law the right

---

1. $10.75 million plus interest is currently on deposit in the registry of this court pending our determination of the reasonableness of the proposed transfer price.

of trial by jury be preserved. The federal merger of law and equity as "civil actions" in 1938 does not and, of course, could not affect the extent of the Seventh Amendment right. *See* Fed.R.Civ.P. 38(a). We are therefore called upon to determine whether the issues raised in the Secretary's claims against Amalgamated and Spickerman are in fact and in substance legal in nature, for if they are, the Seventh Amendment requires that they be tried to a jury irrespective of what ERISA provides. The Supreme Court, in a footnote, has elaborated the contours of this inquiry:

> [T]he "legal" nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries.

*Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970).

As the *Ross* footnote recognizes, the inquiry is essentially counterfactual: with reference to the practical limitations on jurors' abilities, we are to decide whether the nature of the right and the nature of the remedy are such that, had the action existed at common law, it would have been tried to a jury. The simple fact that an action was not heard of at common law, *Pernell v. Southall Realty, Inc.,* 416 U.S. 363, 374–75, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198 (1974), or is one to enforce a subsequently-created statutory right, *Curtis v. Loether,* 415 U.S. 189, 194–95, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974), does not preclude the possible existence of a Seventh Amendment jury trial right. But we are not to infer that an action is legal in character simply because monetary relief is sought. *Curtis v. Loether, supra,* 415 U.S. at 196, 94 S.Ct. at 1009; *A.G. Becker-Kipnis & Co. v. Letterman Commodities,* 553 F.Supp. 118, 123–24 (N.D.Ill.1982).

In this case, the required analysis is fairly straight-forward. First, the *rights* being asserted here—the right to an accounting of a fiduciary's exercise of his trust; the right to recover gains derived from fiduciary breaches; and the right to expect that a fiduciary will act with fidelity and prudence—are rights created in this instance by the trust instrument which established the Fund. Such an instrument, while it has been drafted in conformity with elaborate, recent statutory requirements, is nonetheless in substance a creature of equity jurisprudence. *See e.g.* 1 A. Scott, The Law of Trusts § 1 (3d ed. 1967). Neither Spickerman nor Amalgamated does and neither could dispute this fundamental proposition.

Spickerman is here called to defend his actions as trustee against the Secretary's assertion of these equitable rights. Amalgamated argues that its right to a jury trial depends upon the question whether it is also an ERISA fiduciary as defined in Section 3(20) of ERISA, 29 U.S.C. § 1002(20), a question as to which there may be substantial doubt. What is undisputed, however, is that Amalgamated is a "party in interest", *see* section 3(14) of ERISA, 29 U.S.C. § 1002(14), and therefore is liable under the statute for any improperly gotten gains. For purposes of this ruling, what is decisive is that the Chancellor has always had the power to require restitution from a third party of gains derived from a trustee's breach of duty. 12 G. Bogert, The Law of Trusts and Trustees § 901 at 209 (2d ed. 1962); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 642 (W.D.Wis. 1979). Even if Amalgamated were found not to be an ERISA fiduciary, it could still be required by a court of equity to account for its gains and to make restitution as appropriate.

Amalgamated also focuses on Count VII of the Second Amended Complaint in *Dorfman* and argues that because that count concerns a partially executed *contract* for sale of the Amalgamated claims processing assets, it therefore somehow constitutes an assertion of a legal rather than an equitable right. We disagree. The substantive nature of the right asserted in Count VII is conceptually identical to the rights asserted in the other counts of the Secretary's complaints. The Secretary in Count VII is

seeking restitution for the Fund and its beneficiaries of sums allegedly sought to be improperly transferred to Amalgamated. The issue presented by Count VII is not one of contract law, but rather whether the $10.75 million sales contract is *per se* violative of the equitable rights of the Fund's participants as beneficiaries. By no stretch can Count VII be viewed as an action on a contract.

Second, the *relief* which the Secretary seeks is fundamentally and necessarily equitable. As to the prayer for injunctive relief to prohibit certain defendants from any future dealings in violation of ERISA, this point is obvious and requires no elaboration. Moreover, the various restitutional and accounting remedies prayed for here are not, it is clear, thinly disguised claims for money damages. *Cf. Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 476–79, 82 S.Ct. 894, 899–900, 8 L.Ed.2d 44 (1962). The Secretary does not seek to recover on his own behalf, but rather, is asserting the beneficial rights of Fund participants. Whatever recovery is had is to be for the benefit of the Fund. This is a paradigmatic application of the equitable remedies of restitution and accounting. *See* 4 A. Scott, The Law of Trusts § 281 (3d ed. 1967); *Nedd v. United Mine Workers,* 556 F.2d 190, 207 (3d Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978) (state law); *Thacker v. Norris,* 383 F.2d 735, 740–42 (5th Cir.1967) (action pursuant to section 501(b) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 501(b)).

■ The "practical abilities and limitations of juries" prong of the *Ross* footnote may suggest a "complexity" exception to the Seventh Amendment. It does not follow, however, and there is no basis, in light of the foregoing, for concluding that, because it would not be impossible to present these issues to a jury, the Seventh Amendment requires such presentation if one of the parties demands it. *See A.G. Becker-*

*Kipnis & Co. v. Letterman Commodities, supra,* 553 F.Supp. at 124. What is more, it has become apparent in the course of pre-trial proceedings that the issues before us, including the allocation of liability among the defendants and the analysis of Amalgamated's financial status are complex and, possibly, beyond the ability of the average juror to grasp.

### The Amalgamated Cross Claims

■ The Amalgamated cross claims described above raise contractual rights and seek money damages for breach of express or implied contracts. We have considered the Secretary's contentions to the contrary and conclude that these cross claim issues are clearly legal and that the Seventh Amendment would require a jury trial as to them.

The Secretary also argues that Amalgamated's February 18 jury demand, filed prior to the introduction of the cross claims into this litigation, does not preserve Amalgamated's right to a jury trial as to them. The Secretary argues that Amalgamated's alleged failure to serve an additional jury demand with respect to those issues constitutes a waiver of the jury trial right.[2]

■ The Seventh Amendment embodies an important protection and the right to a jury trial ought not lightly to be found waived. *See In re Zweibon,* 565 F.2d 742, 746 (D.C.Cir.1977). It is equally clear that a jury trial demand *must* be filed "not later than 10 days after the service of the last pleading directed to [the] issue" as to which jury trial is demanded. Fed.R.Civ.P. 38(b). Failure to file a timely demand constitutes a waiver of the right. Fed.R.Civ.P. 38(d).

■ It is established that a general demand preserves the right to jury trial to the full extent of the Seventh Amendment as to all issues raised or to be raised between the demander and those upon whom the demand is served. *See e.g. Rosen v.*

---

**2.** The Secretary, subsequent to the briefing of this motion has advised that Amalgamated may have filed a renewed jury demand subsequent to

and within 10 days of the filing of its cross claims. *See* Transcript of January 12, 1984 Proceedings at 45.

*Dick,* 639 F.2d 82, 91 (2d Cir.1980). In light of this rule, we think it apparent that Amalgamated's February 18, 1983 jury demand was sufficient to preserve the right as to the distinct issues subsequently raised in its cross claims even if no subsequent demand was filed. The February 18 demand was obviously timely with respect to the issues raised in the cross claims since it was actually filed in advance of them.

*Rosen v. Dick, supra,* concerned the ability of a subsequently added defendant to rely on the jury demand of an original defendant, which had been served only on the plaintiff, as to issues distinct from those between the demanding defendant and the plaintiff. It is not authority for the proposition that a general jury demand, served on all parties to pending litigation, must be specifically reasserted with each subsequent pleading to continue to preserve the Seventh Amendment right.

### Conclusion

For the reasons stated, the Secretary's motion to strike jury demands is granted as to the jury demand of defendant Spickerman. As to Amalgamated, the Secretary's motion is granted in part and denied in part. An order will enter.