## CURTIS v. LOETHER ET AL.

No. 72–1035. Argued December 4–5, 1973—
Decided February 20, 1974

MARSHALL, J., delivered the opinion for a unanimous Court.

*Jack Greenberg* argued the cause for petitioner. With him on the briefs were *Michael Davidson, Sylvia Drew, Eric Schnapper, Patricia D. McMahon, Seymour Pikofsky,* and *Charles L. Black, Jr.*

*Robert D. Scott* argued the cause for respondents. With him on the brief was *Edward A. Dudek.**

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Section 812 of the Civil Rights Act of 1968, 82 Stat. 88, 42 U. S. C. § 3612, authorizes private plaintiffs to bring civil actions to redress violations of Title VIII, the fair housing provisions of the Act, and provides that "[t]he court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff

---

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General Griswold, Assistant Attorney General Pottinger,* and *Frank E. Schwelb* for the United States, and by *Norman C. Amaker* for the National Committee against Discrimination in Housing.

actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees . . . ." The question presented in this case is whether the Civil Rights Act or the Seventh Amendment requires a jury trial upon demand by one of the parties in an action for damages and injunctive relief under this section.

Petitioner, a Negro woman, brought this action under § 812, claiming that respondents, who are white, had refused to rent an apartment to her because of her race, in violation of § 804 (a) of the Act, 42 U. S. C. § 3604 (a). In her complaint she sought only injunctive relief and punitive damages; a claim for compensatory damages was later added.[1] After an evidentiary hearing, the District Court granted preliminary injunctive relief, enjoining the respondents from renting the apartment in question to anyone else pending the trial on the merits. This injunction was dissolved some five months later with the petitioner's consent, after she had finally obtained other housing, and the case went to trial on the issues of actual and punitive damages.

Respondents made a timely demand for jury trial in their answer. The District Court, however, held that

[1] Although the lower courts treated the action as one for compensatory and punitive damages, petitioner has emphasized in this Court that her complaint sought only punitive damages. It is apparent, however, that petitioner later sought to recover actual damages as well. The District Court's pretrial order indicates the judge's understanding, following a pretrial conference with counsel, that the question of actual damages would be one of the issues to be tried. App. 18a. Petitioner in fact attempted to prove actual damages, App. 45a, but her testimony was excluded for failure to comply with a pretrial discovery order. The District Judge later dismissed the claim of actual damages for failure of proof. In these circumstances, it is irrelevant that the pleadings were never formally amended. Fed. Rules Civ. Proc. 15 (b), 16.

jury trial was neither authorized by Title VIII nor required by the Seventh Amendment, and denied the jury request. *Rogers* v. *Loether,* 312 F. Supp. 1008 (ED Wis. 1970). After trial on the merits, the District Judge found that respondents had in fact discriminated against petitioner on account of her race. Although he found no actual damages, see n. 1, *supra,* he awarded $250 in punitive damages, denying petitioner's request for attorney's fees and court costs.

The Court of Appeals reversed on the jury trial issue. *Rogers* v. *Loether,* 467 F. 2d 1110 (CA7 1972). After an extended analysis, the court concluded essentially that the Seventh Amendment gave respondents the right to a jury trial in this action, and therefore interpreted the statute to authorize jury trials so as to eliminate any question of its constitutionality. In view of the importance of the jury trial issue in the administration and enforcement of Title VIII and the diversity of views in the lower courts on the question,[2] we granted certiorari, 412 U. S. 937 (1973).[3] We affirm.

The legislative history on the jury trial question is sparse, and what little is available is ambiguous. There seems to be some indication that supporters of Title VIII were concerned that the possibility of racial prejudice on juries might reduce the effectiveness of civil

---

[2] The Seventh Circuit here was the first court of appeals to consider this issue, but the reported decisions of the district courts are evenly divided on the question. In addition to the District Court in this case, the court in *Cauley* v. *Smith,* 347 F. Supp. 114 (ED Va. 1972), held that jury trial was not required in an action under § 812. *Kastner* v. *Brackett,* 326 F. Supp. 1151 (Nev. 1971), and *Kelly* v. *Armbrust,* 351 F. Supp. 869 (N. D. 1972), held that jury trial was required.

[3] Petitioner married while the case was pending before the Court, and her motion to change the caption of the case accordingly was granted. 414 U. S. 1140 (1974).

rights damages actions.[4]  On the other hand, one bit of testimony during committee hearings indicates an awareness that jury trials would have to be afforded in damages actions under Title VIII.[5]  Both petitioner and respondents have presented plausible arguments from the wording and construction of § 812.  We see no point to giving extended consideration to these arguments, however, for we think it is clear that the Seventh Amendment entitles either party to demand a jury trial in an action for damages in the federal courts under § 812.[6]

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be pre-

[4] See, e. g., Hearings on Miscellaneous Proposals Regarding Civil Rights before Subcommittee No. 5 of the House Committee on the Judiciary, 89th Cong., 2d Sess., ser. 16, p. 1183 (1966).

[5] See Hearings on S. 3296 before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 89th Cong., 2d Sess., pt. 2, p. 1178 (1966).

[6] We recognize, of course, the "cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided." United States v. Thirty-seven Photographs, 402 U. S. 363, 369 (1971), and cases there cited. In this case, however, the necessity for jury trial is so clearly settled by our prior Seventh Amendment decisions that it would be futile to spend time on the statutory issue, particularly since our result is not to invalidate the Civil Rights Act but only to direct that a certain form of procedure be employed in federal court actions under § 812.

Moreover, the Seventh Amendment issue in this case is in a very real sense the narrower ground of decision. Section 812 (a) expressly authorizes actions to be brought "in appropriate State or local courts of general jurisdiction," as well as in the federal courts. The Court has not held that the right to jury trial in civil cases is an element of due process applicable to state courts through the Fourteenth Amendment. Since we rest our decision on Seventh Amendment rather than statutory grounds, we express no view as to whether jury trials must be afforded in § 812 actions in the state courts.

served." Although the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, it has long been settled that the right extends beyond the common-law forms of action recognized at that time. Mr. Justice Story established the basic principle in 1830:

> "The phrase 'common law,' found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence. . . . By *common law,* [the Framers of the Amendment] meant . . . not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered . . . . In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form which they may assume to settle legal rights." *Parsons* v. *Bedford,* 3 Pet. 433, 446–447 (1830) (emphasis in original).

Petitioner nevertheless argues that the Amendment is inapplicable to new causes of action created by congressional enactment. As the Court of Appeals observed, however, we have considered the applicability of the constitutional right to jury trial in actions enforcing statutory rights "as a matter too obvious to be doubted." 467 F. 2d, at 1114. Although the Court has apparently never discussed the issue at any length, we have often found the Seventh Amendment applicable to causes of action based on statutes. See, *e. g., Dairy Queen, Inc.* v. *Wood,* 369 U. S. 469, 477 (1962) (trademark laws); *Hepner* v. *United States,* 213 U. S. 103, 115 (1909) (immigration laws); cf. *Fleitmann* v. *Welsbach Street Lighting Co.,* 240 U. S. 27 (1916) (antitrust laws), and the

discussion of *Fleitmann* in *Ross* v. *Bernhard,* 396 U. S. 531, 535–536 (1970).[7] Whatever doubt may have existed should now be dispelled. The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.

*NLRB* v. *Jones & Laughlin Steel Corp.,* 301 U. S. 1 (1937), relied on by petitioner, lends no support to her statutory-rights argument. The Court there upheld the award of backpay without jury trial in an NLRB unfair labor practice proceeding, rejecting a Seventh Amendment claim on the ground that the case involved a "statutory proceeding" and "not a suit at common law or in the nature of such a suit." *Id.,* at 48. *Jones & Laughlin* merely stands for the proposition that the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication[8] and would substantially interfere with the NLRB's role in the statutory scheme. *Katchen*

---

[7] See also *Porter* v. *Warner Holding Co.,* 328 U. S. 395, 401–402 (1946) (Emergency Price Control Act); *Texas & Pacific R. Co.* v. *Rigsby,* 241 U. S. 33 (1916) (Safety Appliance Act). The Courts of Appeals have similarly rejected the notion that the Seventh Amendment has no application to causes of action created by statute. See, *e. g., International Brotherhood of Boilermakers* v. *Braswell,* 388 F. 2d 193, 197 (CA5), cert. denied, 391 U. S. 935 (1968); *Simmons* v. *Avisco, Local 713, Textile Workers,* 350 F. 2d 1012, 1018 (CA4 1965); *Arnstein* v. *Porter,* 154 F. 2d 464, 468 (CA2 1946), as well as the decision of the Seventh Circuit in this case, 467 F. 2d, at 1113–1116. See generally Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv. L. Rev. 1109, 1266 (1971).

[8] "[T]he concept of expertise on which the administrative agency rests is not consistent with the use by it of a jury as fact finder." L. Jaffe, Judicial Control of Administrative Action 90 (1965).

v. *Landy*, 382 U. S. 323 (1966), also relied upon by petitioner, is to like effect. There the Court upheld, over a Seventh Amendment challenge, the Bankruptcy Act's grant of summary jurisdiction to the bankruptcy court over the trustee's action to compel a claimant to surrender a voidable preference; the Court recognized that a bankruptcy court has been traditionally viewed as a court of equity, and that jury trials would "dismember" the statutory scheme of the Bankruptcy Act. *Id.*, at 339. See also *Guthrie National Bank* v. *Guthrie*, 173 U. S. 528 (1899). These cases uphold congressional power to entrust enforcement of statutory rights to an administrative process or specialized court of equity free from the strictures of the Seventh Amendment. But when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.[9]

We think it is clear that a damages action under § 812 is an action to enforce "legal rights" within the meaning of our Seventh Amendment decisions. See, *e. g.*, *Ross* v. *Bernhard, supra*, at 533, 542; *Dairy Queen, Inc.* v. *Wood, supra*, at 476–477. A damages action under the statute sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law.[10]

---

[9] See *Rogers* v. *Loether*, 467 F. 2d 1110, 1115–1116 (CA7 1972); Developments in the Law, *supra*, n. 7, at 1267–1268.

[10] For example, the Court of Appeals recognized that Title VIII could be viewed as an extension of the common-law duty of innkeepers not to refuse temporary lodging to a traveler without justi-

More important, the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law.[11]

We need not, and do not, go so far as to say that any award of monetary relief must necessarily be "legal" relief. See, e. g., *Mitchell* v. *DeMario Jewelry, Inc.*, 361 U. S. 288 (1960); *Porter* v. *Warner Holding Co.*, 328 U. S. 395 (1946).[12] A comparison of Title VIII with Title VII of the Civil Rights Act of 1964, where the courts of appeals have held that jury trial is not required in an action for reinstatement and backpay,[13] is

---

fication, a duty enforceable in a damages action triable to a jury, to those who rent apartments on a long-term basis. See 467 F. 2d, at 1117. An action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of mental distress. Indeed, the contours of the latter tort are still developing, and it has been suggested that "under the logic of the common law development of a law of insult and indignity, racial discrimination might be treated as a dignitary tort." C. Gregory & H. Kalven, Cases and Materials on Torts 961 (2d ed. 1969).

[11] The procedural history of this case generated some question in the courts below as to whether the action should be viewed as one for damages and injunctive relief, or as one for damages alone, for purposes of analyzing the jury trial issue. The Court of Appeals concluded that the right to jury trial was properly tested by the relief sought in the complaint and not by the claims remaining at the time of trial. 467 F. 2d, at 1118–1119. We need express no view on this question. If the action is properly viewed as one for damages only, our conclusion that this is a legal claim obviously requires a jury trial on demand. And if this legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as "incidental" to the equitable relief sought. *Beacon Theatres, Inc.* v. *Westover*, 359 U. S. 500 (1959); *Dairy Queen, Inc.* v. *Wood*, 369 U. S. 469, 470–473 (1962).

[12] See also *Swofford* v. *B&W, Inc.*, 336 F. 2d 406, 414 (CA5 1964).

[13] *Johnson* v. *Georgia Highway Express, Inc.*, 417 F. 2d 1122, 1125 (CA5 1969); *Robinson* v. *Lorillard Corp.*, 444 F. 2d 791, 802 (CA4), cert. dismissed under Rule 60, 404 U. S. 1006 (1971); cf. *McFerren*

instructive, although we of course express no view on the jury trial issue in that context. In Title VII cases the courts of appeals have characterized backpay as an integral part of an equitable remedy, a form of restitution. But the statutory language on which this characterization is based—

> "[T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate," 42 U. S. C. § 2000e-5 (g) (1970 ed., Supp. II)—

contrasts sharply with § 812's simple authorization of an action for actual and punitive damages. In Title VII cases, also, the courts have relied on the fact that the decision whether to award backpay is committed to the discretion of the trial judge. There is no comparable discretion here: if a plaintiff proves unlawful discrimination and actual damages, he is entitled to judgment for that amount. Nor is there any sense in which the award here can be viewed as requiring the defendant to disgorge funds wrongfully withheld from the plaintiff. Whatever may be the merit of the "equitable" characterization in Title VII cases, there is surely no basis for characterizing the award of compensatory and punitive damages here as equitable relief.[14]

---

v. *County Board of Education*, 455 F. 2d 199, 202–204 (CA6 1972); *Harkless* v. *Sweeny Independent School District*, 427 F. 2d 319, 324 (CA5 1970), cert. denied, 400 U. S. 991 (1971); *Smith* v. *Hampton Training School*, 360 F. 2d 577, 581 n. 8 (CA4 1966) (en banc); see generally Developments in the Law, *supra*, n. 7, at 1265–1266.

[14] See Comment, The Seventh Amendment and Civil Rights Statutes: History Adrift in a Maelstrom, 68 Nw. U. L. Rev. 503, 524–527 (1973).

We are not oblivious to the force of petitioner's policy arguments. Jury trials may delay to some extent the disposition of Title VIII damages actions. But Title VIII actions seeking only equitable relief will be unaffected, and preliminary injunctive relief remains available without a jury trial even in damages actions. *Dairy Queen, Inc.* v. *Wood,* 369 U. S., at 479 n. 20. Moreover, the statutory requirement of expedition of § 812 actions, 42 U. S. C. § 3614, applies equally to jury and non-jury trials. We recognize, too, the possibility that jury prejudice may deprive a victim of discrimination of the verdict to which he or she is entitled. Of course, the trial judge's power to direct a verdict, to grant judgment notwithstanding the verdict, or to grant a new trial provides substantial protection against this risk, and respondents' suggestion that jury trials will expose a broader segment of the populace to the example of the federal civil rights laws in operation has some force. More fundamentally, however, these considerations are insufficient to overcome the clear command of the Seventh Amendment.[15] The decision of the Court of Appeals must be

*Affirmed.*

---

[15] Although petitioner has emphasized that the policies underlying the Fair Housing Act are derived from the Thirteenth and Fourteenth Amendments, she expressly "does not maintain that these constitutional considerations could prevent a jury trial if a jury were otherwise required by the Seventh Amendment." Brief for Petitioner 7. Moreover, although the legislative history of Title VIII with respect to jury trials is ambiguous, there is surely no indication that Congress intended to override the requirements of the Seventh Amendment if it mandates that jury trials be provided in § 812 damage actions. We therefore have no occasion to consider in this case any question of the scope of congressional power to enforce § 2 of the Thirteenth Amendment or § 5 of the Fourteenth Amendment.