NIMROD MARKETING (OVERSEAS) LTD. and T. Anderson-Slight, Plaintiffs-Appellees,

v.

TEXAS ENERGY INVESTMENT CORP., et al., Defendants-Appellants.

No. 84–2247.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1985.

Rehearings Denied Oct. 10, 1985.

Fulbright & Jaworski, Dana G. Kirk, John B. Beckworth, Houston, Tex., for defendants-appellants.

Talbert, Giessel & Stone, Steven P. Mock, Alice M. Giessel, Houston, Tex., for plaintiffs-appellees.

Before GARZA, POLITZ and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

Nimrod Marketing (Overseas) Ltd. and its president, Tom Anderson-Slight, invoked diversity jurisdiction and sued Texas Energy Investment Corp. and Advanced Technology, Ltd. (ATL) for cancellation charges and expenses resulting from a breach of a purchasing agent agreement. After a bench trial, the district court found liability based on the doctrine of promissory estop-

pel and awarded damages. Texas Energy and ATL appeal contending that the court erred (1) in denying their request for a jury trial, (2) in allowing recovery for cancellation charges, and (3) in calculating the dollar damages. We find no error in the jury trial and recovery allowance issues but find error in the damage calculation. Accordingly we affirm in part, reverse in part and remand for entry of an appropriate judgment.

### Facts

Texas Energy,[1] a Texas-based oil trading company under contract with the Nigerian government, formed a joint venture with Nigerian investors to build low-cost housing for Russian steelworkers in Ajaokuta, Nigeria. In furthering the venture, Texas Energy and the Nigerians formed a partnership cognomened Advanced Technology Ltd.

The partners were immediately confronted with the complex task of getting building materials, equipment, and supplies into Nigeria and arranging for payment with Nigerian funds. In May of 1981, while returning to London from a trip to Lagos, made to conclude the contract with the Nigerian government, William A. Houston, construction superintendent for Texas Energy, found himself serendipitously seated next to Tom Anderson-Slight, president of Nimrod. Nimrod, an international trading company with extensive experience in international trading, had had numerous dealings in West Africa in the prior decade. Upon learning of Texas Energy's need for help in the purchasing and shipping of goods to Nigeria, Anderson-Slight told Houston of his company's expertise and expressed an interest in acting as Texas Energy's purchasing agent for the Nigerian project. During the week that followed, Houston, Anderson-Slight, and Homi Toni Boga, Nimrod's Executive and Technical Director responsible for preparation of schedules, estimates, material selection and purchases, met in London to discuss the project in depth. At that time Anderson-Slight and Boga examined in detail a list supplied by Texas Energy of items needed for the project including equipment, construction material, food and living quarters. Following those meetings, Nimrod provided price quotes for items on the list and, subsequently, for items on an updated list.

In late August, Anderson-Slight met in Houston with senior officials of Texas Energy to explain the documentation necessary for shipments to Nigeria. During Anderson-Slight's four-day stay in Houston, purchase orders were issued by ATL. Items were color-coded to reflect priority in shipment. The initial purchase orders covered items color-coded green, indicating those items to be shipped immediately. Verbal purchase orders were also issued at that time.

During this August 1981 visit to Houston, Anderson-Slight was given two "comfort" letters dated September 1, 1981 and September 2, 1981, appointing Nimrod as purchasing agent for the Nigerian project. The first letter authorized Nimrod to purchase upon order of ATL. The second letter authorized Nimrod to act upon orders of Texas Energy.

Acting pursuant to the comfort letters, purchase orders, and verbal authorizations of ATL employees, Anderson-Slight began acquiring equipment and materials from Nimrod suppliers. In addition, Nimrod incurred expenses for several trips to Nigeria between June and October of 1981.

Several weeks later the matter ground to a halt. At a meeting in Houston sometime between October 31, 1981 and November 4, 1981, Texas Energy representatives informed Anderson-Slight that because of a disagreement over financing with their Nigerian partners they were withdrawing from the project. Unable to resolve their differences, Nimrod and Anderson-Slight filed suit seeking damages for expenses

---

1. Texas Energy refers to a group of companies, Texas Energy Investment Corporation, Texas Energy Petroleum Corporation, Texas Energy International, S.A., and Texas Reserve Construction Company, which the trial court found operated as a single entity.

and charges incurred in cancelling the contracts with its suppliers. They grounded their claims on promissory estoppel. At the time of trial, despite receipt of demand letters and threats of litigation, no supplier had filed suit against Nimrod, opting instead to forego legal action until the conclusion of the instant suit.

Nimrod originally requested a jury trial but withdrew that request at a pretrial conference. Texas Energy and ATL promptly asked for a trial by jury, a request reflected in the pretrial order and repeated at the outset of the trial. The district court denied the request on a finding that Texas Energy and ATL had waived their demand for trial by jury.

After a bench trial, judgment was rendered in favor of Nimrod and Anderson-Slight on a finding that they had relied on the "comfort letter" of September 1, 1981 to their detriment. Damages for cancellation charges and out-of-pocket expenses incurred after receipt of that letter were awarded. In computing the cancellation charges the trial court applied the monetary exchange rate for British pounds sterling into United States dollars applicable on the date of the breach of the agreement. The exchange rate at that time was $1.90/1 pound sterling. The exchange rate on the date of final judgment, January 26, 1984, was $1.4045/1 pound sterling. The rate as of this writing is near $1.30/1 pound sterling. The rate has obviously varied markedly in the time period involved.

### Analysis

A. Jury Trial.

■ Texas Energy and ATL insist that they did not waive jury trial and maintain that the trial court erred in denying their request. We are persuaded that the trial court erred in concluding that Texas Energy and ATL waived a jury trial. They were entitled to rely on Nimrod's demand for jury and it was not necessary that they assert that demand until Nimrod withdrew its request. *Pinemont Bank v. Belk*, 722 F.2d 232 (5th Cir.1984); *Southland Reship,*

*Inc. v. Flegel*, 534 F.2d 639 (5th Cir.1976). Their request was timely.

The Federal Rules of Civil Procedure provide the mechanism for waiver of a requested jury trial. Rule 39(a) provides in pertinent part:

The trial of all issues so demanded shall be by jury unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury....

Texas Energy and ATL entered no written or oral stipulation consenting to trial by the court. To the contrary, the pretrial order shows that they demanded trial by jury immediately after Nimrod expressed a willingness to waive its demand. That request was repeated at the beginning of the trial and consistently maintained to and through the appeal.

■ Although the trial court inadvertently erred in finding waiver, it did not err in declining Texas Energy and ATL's request for a jury trial. Plaintiffs' complaint was not triable by jury. The seventh amendment is not absolute; it does not assure a trial by jury of all justiciable disputes. As the Supreme Court observed in *Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974) (*quoting in part Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830)):

[I]t has long been settled that the right extends beyond the common-law forms of action recognized [in 1791].... "The phrase 'common law,' found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence ... not merely suits, which the *common law* recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered...."

*See also Earlie v. Jacobs*, 745 F.2d 342 (5th Cir.1984); *Cooley v. Strickland Transp.*

*Co.,* 459 F.2d 779 (5th Cir.1972); *Gefen v. United States,* 400 F.2d 476 (5th Cir.1968). Promissory estoppel is an equitable form of action in which equitable rights alone are recognized. *Wheeler v. White,* 398 S.W.2d 93 (Tex.1965); *Richey v. Miller,* 142 Tex. 274, 177 S.W.2d 255 (1944); *Keene v. Gold,* 27 S.W.2d 631 (Tex.Civ.App.1930). Defendants had no right to trial by jury; there was nothing to waive.

**B. Recovery of Cancellation Charges.**

Texas Energy and ATL argue that the court erred in allowing recovery for cancellation charges because those charges had not been paid to Nimrod's suppliers as of the date of trial. The suppliers had apparently agreed to defer their claims pending the outcome of the instant litigation. Appellants maintain that the damages awarded for the cancellation charges were speculative and contingent. We find this argument without merit.

■ Under well-settled Texas law, losses resulting from collateral contracts are recoverable in an action for breach of contract if the breaching party "had knowledge of the special circumstances producing such damages." *Longview Const. & Dev., Inc. v. Loggins Const. Co.,* 523 S.W.2d 771, 777 (Tex.Civ.App.—Tyler 1975); *Texas Power & Light Co. v. Barnhill,* 639 S.W.2d 331 (Tex.App.—Texarkana 1982), *writ ref'd n.r.e.*

■ It is beyond peradventure that Texas Energy and ATL were aware that Nimrod and Anderson-Slight promptly began placing orders for supplies, equipment, and material pursuant to the September 1, 1981 comfort letter and the written and oral purchase orders for such goods. They clearly had knowledge of the special circumstances producing damages upon their breach of the purchasing agent agreement. The trial court did not err in finding them liable for these damages.

■ Texas Energy and ATL would find shelter in the apparent willingness of Nimrod's creditors to forebear their right to exact payment from Nimrod pending the outcome of this suit. They misperceive the prevailing rule. This action by Nimrod's creditors does not constitute a release of a legal obligation inuring to defendants' benefit. *Aubrey v. Workman,* 384 S.W.2d 389 (Tex.Civ.App.—Fort Worth 1964). *See Kennard v. McCray,* 648 S.W.2d 743 (Tex.App.—Tyler 1983). Nor were the charges contingent and speculative. They were specific and certain. The trial court found the incurred charges to be: Consortex, S.A., 116,250 U.S. dollars; A.G. Knight, 81,666 British pounds sterling; Inder., 66,710 British pounds sterling; and Map Speed Freight, 37,912 British pounds sterling.

**C. Rate of Exchange.**

Texas Energy and ATL contend that the district court erred in its calculation of damages in dollars. They maintain that the court should have converted the amounts due the three suppliers in British pounds sterling into dollars as of the date of judgment, not the date of the breach. We agree that the trial judge erred in this respect.

■ Recovery under the theory of promissory estoppel is limited to "the amount necessary to compensate that party for a loss already suffered." *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 734 (Tex.1981); *Wheeler v. White,* 398 S.W.2d 93 (Tex.1965). One recovering under promissory estoppel should not be penalized, nor should one experience a windfall. The contracts call for Nimrod to pay most of the cancellation damages in British pounds sterling. Nimrod has not yet paid those debts and to be made whole should receive the amount in dollars that will purchase the precise number of pounds required for those payments. To avoid both penalty and windfall the court should direct payment in dollars convertible from British pounds sterling based on the exchange rate on the date the corrected judgment is entered.

The judgment of the district court is AFFIRMED except as to the calculation of damages. That part of the judgment is

VACATED and the matter is REMANDED for entry of a judgment consistent herewith.