

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-1997

# Klinger v. State Farm Mutl Auto

Precedential or Non-Precedential:

Docket 96-7073,96-7102,96-7074,96-7101

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Klinger v. State Farm Mutl Auto" (1997). *1997 Decisions.* Paper 125.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/125

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 10, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-7073, 96-7102

MARK KLINGER,

Appellant in 96-7073

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,*

Cross-Appellant in 96-7102

(*Amended by 2/20/96 Order)

(D.C. No. 94-cv-01393)

Nos. 96-7074, 96-7101

LINDA NEYER,

Appellant in 96-7074

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Cross-Appellant in 96-7101

(D.C. No. 94-cv-01469)

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Argued: January 23, 1997

Before: NYGAARD and LEWIS, <u>Circuit Judges</u>, and
COHILL, <u>Senior District Judge</u>.*

(Opinion filed June 10, 1997)

DAVID L. LUTZ, ESQUIRE
RICHARD C. ANGINO, ESQUIRE
(Argued)
Angino & Rovner
4503 North Front Street
Harrisburg, PA 17110

Attorneys for Appellants/
Cross-Appellees

ROBERT E. KELLY, JR., ESQUIRE
(Argued)
Duane, Morris & Heckscher
305 North Front Street
P.O. Box 1003
Harrisburg, PA 17108-1003

Attorney for Appellee/
Cross-Appellant

## OPINION OF THE COURT

NYGAARD, <u>Circuit Judge</u>.

Mark Klinger and Linda Neyer appeal from the decision of
the district court denying them costs, attorney's fees and
the full amount of pre-judgment interest they sought in
their otherwise successful bad faith action against State
Farm Mutual Automobile Insurance Company. We conclude
that the district court erred only in one aspect--the reasons

_____

*Honorable Maurice B. Cohill, Jr., United States District Court for the
Western District of Pennsylvania, sitting by designation.

it gave for denying the request for attorney's fees--but that its error was in its explanation, not in its application of legal precepts and does not affect the amount to which appellants are entitled. We will therefore affirm.

I.

A.

In August 1992, Klinger and Neyer were seriously injured in a head-on collision while riding in Klinger's van, which was one of two vehicles owned by him and insured by State Farm. The other driver's insurance was inadequate to compensate them for their injuries, so Klinger and Neyer filed underinsured motorist claims against the two State Farm policies.

State Farm disputed the amount of coverage available under these insurance policies, and the parties agreed to bifurcate the issues of coverage and damages and to arbitrate them separately.1 Attorney Richard Wix represented State Farm. Attorney David L. Lutz represented Klinger and Neyer.

In October 1993, the arbitrators determined that the coverage available under Klinger's two policies was $115,000. That established, in November, Attorney Lutz sent two letters to Wix demanding that State Farm tender the policy limits to his clients. Wix, however, never apprised State Farm of either of these letters. State Farm contends that it did not know the results of the arbitration because its attorney, Wix, did not answer his phone calls. A State Farm claims representative, however, did not personally visit Wix's office until March 1994. Nonetheless, in January 1994, Attorney Lutz told Timothy Spader, a State Farm claims representative, the results of the arbitration and of his demand letters, when Spader happened to be talking to Lutz about another matter.

_____

1. In April 1993, before the coverage arbitration was held, State Farm offered each plaintiff $15,000, an amount representing the policy limits as State Farm interpreted them. This offer was refused.

3

Spader then contacted Attorney Wix, who promised him a letter documenting the status of the case. After receiving nothing, Spader finally visited Wix's office personally in March 1994 and obtained some medical records and documentary data. Only then did Spader contact Attorney Lutz, who had earlier written that he was considering a bad faith claim and stated that he would provide State Farm with whatever information it needed to evaluate the extent of damages.

Still State Farm did nothing. In March 1994, the arbitrators scheduled the damages arbitration for June 28. Again Lutz demanded that State Farm pay the policy limits. Again, State Farm's attorney apparently failed to forward this request to State Farm. In April, Lutz went around State Farm's attorney, writing directly to Spader, and inquired whether State Farm was interested in settling the case. Still State Farm offered its insureds nothing.

In June, although the hearing was scheduled for less than a week later, and even though Wix himself now recommended that State Farm tender them the policy limits, State Farm made no offer to pay the appellants anything. Instead, State Farm sought a stay of the hearing. Attorney Lutz refused, and they arbitrated damages. The arbitrators awarded $115,000 to Klinger and $70,000 to Neyer. Finally, on August 2, 1994, a full two years after the accident, and months after State Farm had all the information necessary to evaluate Klinger and Neyer's claims, State Farm paid them.

B.

Klinger and Neyer filed suit in the Dauphin County Court of Common Pleas, alleging that State Farm's delay in paying their claims was a display of bad faith under 42 Pa. C.S.A. § 8371. State Farm removed the case to federal court based on diversity of citizenship. The case was tried before a jury, which awarded punitive damages to each plaintiffs in the amount of $150,000. State Farm then filed a motion for judgment as a matter of law, or, in the alternative, for a new trial, under Fed. R. Civ. P. 50(b) and 59(a). The district court denied this motion. Klinger and Neyer filed motions

4

seeking interest, costs and attorney's fees under§ 8371. The district court awarded interest, but denied the costs and fees, opining that "State Farm ha[d] been adequately punished by the punitive awards. . . ." These appeals followed.

II.

A.

State Farm first argues that the evidence was insufficient to support the jury's verdict of bad faith. It also asserts that the jury was improperly instructed on the test to be applied in determining the existence of bad faith under Pennsylvania law. It is wrong on both points.

1.

The standard for bad faith claims under § 8371 is set forth in Terletsky v. Prudential Property & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994), appeal denied, 659 A.2d 560 (Pa. 1995). There, the Pennsylvania Superior Court applied a two-part test, both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis. The district court instructed the jury accordingly. The Terletsky court also stated, however, that

"[b]ad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Id. (quoting Black's Law Dictionary 139 (6th ed. 1990)). From this, State Farm argues that a third element must be

5

satisfied, to wit, that the insurer was motivated by an improper purpose such as ill will or self-interest.

We reject that reading of Terletsky. Although the definition the court recited did advert to a "dishonest purpose" such as "self-interest or ill will[,]" this is dictum. Moreover, State Farm's self-interest is the only plausible explanation for its delay. Nonetheless, we need not reach that issue: A page later the court actually applied the two-part test:

To recover under a claim of bad faith, the Terletskys were required to show that Prudential lacked a reasonable basis for partially denying payment . . . and that Prudential recklessly disregarded a lack of reasonable basis in denying the payment. Prudential's actions, however, were reasonably based.

Id. at 689-90. In our prediction of how the Pennsylvania Supreme Court would measure bad faith claims, we will rely on the actual test that Terletsky applied and refrain from creating a third part based only on dictum quoted from Black's Law Dictionary. Accordingly, we conclude that the district court did not err when it instructed the jury.

2.

We also believe that the evidence was sufficient for a jury to conclude that State Farm lacked a reasonable basis for refusing to pay the appellants, and knew or recklessly disregarded that fact. State Farm acknowledged at oral argument that it is chargeable with the actions of its attorney. As such, it is also chargeable with his inactions. Moreover, Mr. Spader testified that, as early as March 1994, he knew that liability was clear and that State Farm had received a demand package indicating that both Klinger and Neyer had sustained serious injuries. Next, Wix himself testified that he advised State Farm to tender the policy limits before the damages arbitration. Yet, State Farm never offered to pay Klinger and Neyer anything beyond the early and clearly inadequate offer it made before the coverage arbitration. Finally, plaintiffs' expert testified that State Farm acted recklessly and unreasonably. Hence there is ample evidence from which a reasonable jury could

6

have concluded that State Farm knew or recklessly disregarded the fact that it had no reasonable basis for refusing to pay its insureds' claims.2  We will not disturb its verdict.

3.

State Farm challenges the bad faith award to Ms. Neyer for yet another reason. Neyer demanded $115,000, but the arbitrator ultimately awarded only $70,000. Thus, State Farm argues, as a matter of law it could not have acted in bad faith by refusing to offer the full $115,000.

State Farm relies on Kaufmann v. Aetna Cas. & Sur. Co., 794 F. Supp. 137 (E.D. Pa. 1992). First, that is a district court case and not precedential. Second, there, the issue was whether the limits of multiple policies could be stacked for a total of $1 million in coverage; if they could not, the plaintiff 's recovery was limited to $500,000. Aetna offered $500,000 to the plaintiffs without prejudice to its litigation of the stacking issue, and they accepted the partial settlement. The arbitrators then awarded $950,000, and Aetna timely paid over the remaining $450,000. The court opined:

Plaintiffs contend that Mr. Kaufmann's injuries were so

_____

2. State Farm argues that it reasonably relied upon its counsel. We would never opine to the contrary, at least for certain advice and representation. Nonetheless, because this point is argued we find it necessary to remark that representation is not an excuse for the insurer's failure to perform its obligations under the policy it issued to the insured. Here, State Farm's attorney would not even answer his phone calls. With admittedly clear liability, serious injuries and Mr. Klinger on welfare because he could no longer work, it was incumbent upon State Farm to do more. And because counsel for the insureds cannot simply make an "end-run" around the insurer's attorney to deal directly with the insurer, the insurer may not hide behind this relationship to argue that it reasonably ignored its obligations under the insurance policy to its insureds, one of which is to pay them compensation if injured. Otherwise, an insurer could simply hire counsel, bury its head in the sand, pay when ordered to do so, retain the use of the insured's money in the meantime, and escape without adverse consequences.

severe that Aetna should have waived its contractual right to arbitration and simply tendered $1 million.. . . The arbitrators then awarded less than the full $1 million stacked limit, albeit only $50,000 less. The arbitrators' decision belies plaintiffs' contention that they were plainly entitled to the full amount which their policy provided as a limit. Under these circumstances, no reasonable factfinder could conclude that Aetna's decision to proceed to arbitration constituted bad faith.

Id. at 141.

Finally, Kaufman is not persuasive. Aetna had at least tendered the $500,000 in coverage that was not disputed, whereas State Farm never made any offer to Neyer either after the coverage arbitration was decided, or when the extent of her injuries had become clear to it. A rational jury could well have concluded that State Farm, by not making an offer to Neyer based upon some objective criteria it believed compensated adequately for her injuries, knowingly or recklessly acted without reasonable basis. The mere fact that the arbitrators ultimately decided that Neyer was entitled to less compensation than the amount she wanted is not a sufficient basis to relieve State Farm from its responsibility to offer what was reasonably due her. Had it done so, both the damages arbitration and this suit might well have been avoided. We will not overturn the jury's verdict.

B.

State Farm also takes issue with the jury's decision to impose punitive damages. It argues that the evidence was insufficient to support such an award and that, in any event, the matter should have been decided by the court rather than the jury. Again, we disagree.

1.

We will look to Pennsylvania law governing punitive damages to determine whether the award was proper. Pennsylvania has adopted section 908 of the Restatement

8

(Second) of Torts governing punitive damages. <u>Delahanty v. First Pa. Bank, N.A.</u>, 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983). They are awarded to punish a defendant for outrageous conduct, which is defined as an act which, in addition to creating "actual damages, also imports insult or outrage, and is committed with a view to oppress or is done in contempt of plaintiffs' rights." <u>Id.</u> Both intent and reckless indifference will constitute a sufficient mental state. <u>See id.</u>

Here, the district court concluded that the jury could have reasonably found that State Farm's conduct, to wit, relying on its counsel despite his non-performance and never making an offer to pay its insureds before the damages arbitration, was egregious enough to warrant punitive damages. We agree. Insurance contracts create affirmative duties: The insured must pay premiums; the insurer must pay when its insured suffers an insured event. There was testimony from plaintiffs' expert that State Farm's conduct was in reckless disregard of plaintiffs' rights because it "didn't have a good reason for not making an offer[ ]" and because State Farm was not "considering the interests of their -- of Klinger and Neyer who were their insureds." He added that "[t]hey made them no offer when there was no reason for not doing this. There was clear liability and serious injuries." When asked how he would characterize that type of conduct, he answered, "I think that's disregarding, recklessly disregarding the rights of their insured." He then stated that, in his opinion, this conduct was outrageous. This testimony provided the jury a sufficient basis to award punitive damages.

2.

State Farm also argues that the issue of punitive damages was required by the terms of § 8371 to be decided by the court and not placed before the jury because the statute provides that "the court" may impose, <u>inter alia</u>, punitive damages. Frankly, we fail to see the harm. Clearly, the court can ask for an advisory verdict. Second, the court could have rejected the verdict. Finally, it was the court that entered judgment on the verdict. Hence, it had control at all stages.

9

Moreover, as State Farm acknowledges, the Seventh Amendment itself provides the right to trial by jury in suits at common law. See Curtis v. Loether, 415 U.S. 189, 192, 94 S. Ct. 1005, 1007 (1974). Arguing, however, that the Seventh Amendment provides no right to a jury trial on punitive damages in a § 8371 case, State Farm relies on Tull v. United States, 481 U.S. 412, 107 S. Ct. 1831 (1987). In that case, the Supreme Court held that the amount of a statutory civil penalty under the Clean Water Act could be decided by the trial court, id. at 427, 107 S. Ct. at 1840, even though the issue of liability implicated the right to trial by jury under the Seventh Amendment. Id. at 423, 107 S. Ct. at 1838. It reasoned that, because "Congress itself may fix the civil penalties, it may delegate that determination to trial judges[,]" id. at 427, 107 S. Ct. at 1840, noting that calculations of civil penalties involve exercises of discretion "traditionally performed by judges." Id.

We find Tull inapposite. Rather, we believe that the appropriate precedent is Curtis, in which the Court held that a "damages action under [42 U.S.C. § 3612] . . . is analogous to a number of tort actions recognized at common law. More important, the relief sought here-- actual and punitive damages--is the traditional relief offered in the courts of law." Id. at 195-96, 94 S. Ct. at 1009. Thus, we conclude that the punitive damages remedy in a statutory bad faith action under § 8371 triggers the Seventh Amendment jury trial right, a result consistent with several cases that have decided the issue. See Fahy v. Nationwide Mut. Fire Ins. Co., 885 F. Supp. 678, 679 (M.D. Pa. 1995); Younis Bros. & Co. v. CIGNA Worldwide Ins. Co., 882 F. Supp. 1468, 1470, 1476 (E.D. Pa. 1994); MacFarland v. United States Fidelity & Guarantee Co., 818 F. Supp. 108, 112 (E.D. Pa. 1993); Thomson v. Prudential Property & Cas. Ins. Co., No. 91-4073, 1992 WL 210088, *4 (E.D. Pa. Aug. 24, 1992).3

_____

3. State Farm relies additionally on three district court cases in which the courts held that the issue of punitive damages under § 8371 was for the court rather than the jury. See Giampa v. State Farm Ins. Co., No. 93-4948, 1993 WL 505614 (E.D. Pa. Dec. 8, 1993); Gilderman v. State Farm Ins. Cos., No. 91-6353, 1991 WL 276017 (E.D. Pa. Dec. 18, 1991); Carson v. ITT Hartford Ins. Group, No. 91-3113, 1991 WL 147469 (E.D. Pa. July 24, 1991). Notably, however, none of these cases analyzed the issue in a Seventh Amendment context.

Accordingly, we will affirm the jury's award of punitive damages.

III.

Klinger and Neyer appeal from the district court's decision not to award pre-judgment interest, costs and attorney's fees. We have examined their arguments with respect to the timing of pre-judgment interest and the awarding of costs and find them to be without merit. The fee issue requires a little more discussion.

The district court denied attorney's fees because it believed that State Farm had been punished enough by the punitive damages the jury had awarded. This reasoning is problematic. Indeed at argument, counsel for State Farm acknowledged that the statute provides "both punitive and remedial" relief. In a general sense, punitive damages are awarded to punish the defendant for its bad faith in failing to do that which it was contractually obligated to do. Attorney's fees, however, are awarded to compensate the plaintiff for having to pay an attorney to get that to which they were contractually entitled. Along with interest, costs and delay damages, the object of an attorney fee award is to make the successful plaintiff completely whole.

Appellants here were put to the unnecessary expense of having to hire an attorney by State Farm's refusal to do for them what it had contracted to do. Hence, appellants were damaged economically as surely as if State Farm had purposely or negligently rammed one of its automobiles into appellants'. The obvious design of the Pennsylvania statute is, first, to place Klinger and Neyer in the same economic position they would have been in had the insurer performed as it promised, by awarding attorney's fees as additional damages; and second, to punish State Farm for giving primacy to its own self-interest over that of the appellants by awarding punitive damages. The separate provisions of this statute answer both needs. Thus, it would appear that in refusing to award attorney's fees because the defendant had been "punished" enough, the court erred. Nonetheless, we believe that the error was only in how the court explained the award, but not in its application of the law.

11

The district court obviously intended to both punish State Farm and to make the appellants whole, and it believed that the punitive damage award accomplished both. Hence, we conclude that a remand is unnecessary.

IV.

Because the district court's rulings on the merits were legally correct and the jury's verdicts supported by sufficient evidence, we will affirm State Farm's cross-appeals; and because the court's error is harmless and it is unnecessary to remand, we will also affirm Klinger's and Neyer's primary appeals.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

12