**In re Joyce Annette SPENCE.**

**Joyce Annette Spence, Plaintiff,**

**v.**

**Southern Mortgage Company and First Union Mortgage Company, Defendants,**

**v.**

**Ray M. Gibson, Jr., Universal Title and Escrow, LLC, Cross–Defendants.**

**Bankruptcy No. 99–40492.
Adversary No. 99–1104.**

United States Bankruptcy Court,
N.D. Mississippi.

May 18, 2001.

Larry C. Skelton, Corinth, MS, for Debtor.

Jacob C. Pongetti, Columbus, MS, trustee.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for leave to file an amended com-

plaint, filed by the plaintiff, Joyce Annette Spence, ("debtor"); response in opposition thereto having been filed by the defendants, Southern Mortgage Company ("Southern Mortgage") and First Union Mortgage Company ("First Union"); Ray M. Gibson, Jr., and Universal Title and Escrow, LLC, ("cross-defendants"), having joined in opposition to the motion to amend; and the court, having considered same, finds as follows, to-wit:

## I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(I), (K), and (O).

## II.

The debtor obtained a residential mortgage loan from Southern Mortgage to refinance her home. The loan was subsequently assigned from Southern Mortgage to First Union. Approximately one year later, the debtor filed a Chapter 7 bankruptcy petition, as well as, a complaint to determine the extent and validity of the lien held by First Union. The original complaint, filed on April 28, 1999, raised two separate issues. First, the debtor asserted that a notary public was not present to acknowledge the loan documents that she executed, and, second, she asserted that she was not given the three day right to rescind notice, required by the Truth–in–Lending Act ("TILA"). Accordingly, she contended that since the notice to rescind was not given, the rescission period was extended by TILA for a period of three years from the date of the loan closing. The debtor then stated that she gave a notice of rescission within the three year period, and that her rescission therefore voided the deed of trust held by First

Union. The only relief requested in the original complaint was rescission and a determination by the court that the underlying debt was unsecured and thus dischargeable in bankruptcy.

On September 15, 2000, Southern Mortgage and First Union filed a motion for summary judgment. In her brief filed in response to the motion, the debtor asserted for the first time that Southern Mortgage had given improper or misleading disclosures when the loan was closed. Southern Mortgage and First Union filed a motion to strike these allegations from the response since they had not been mentioned in the original complaint. After denying the motion for summary judgment, the court issued a separate order overruling the motion to strike as being moot. However, the court indicated that if the plaintiff intended to pursue the unpled TILA allegations, her complaint would have to be amended.

At some point in time, the debtor and her bankruptcy attorney associated a second attorney to assist in the prosecution of this cause of action. The present motion for leave to amend was filed on December 5, 2000. The proposed amended complaint raises, in addition to the invalid acknowledgment and the failure to give a proper notice of rescission, the following issues:

1. Lack of authority to do business— The debtor contends that Southern Mortgage is not a duly qualified legal entity in the State of Mississippi in that it holds no certificate of authority to do business within the state. Accordingly, the debtor alleges that Southern Mortgage never held a lien against her real property. She then asserts that since Southern Mortgage held no lien interest against the property, First Union, as the successor in interest, likewise holds no lien.

2. Trickery, deceit, and surreptitious acts—The debtor maintains that Southern Mortgage and First Union entered into a business relationship to solicit the debtor and other similarly situated homeowners for the purpose of obtaining unlawful gains and profits through trickery, deceit, and chicanery.

3. Truth–in–Lending Act disclosure violations—The debtor asserts that she was not provided a written itemization of the amount financed in violation of 15 U.S.C. § 1638(a)(2)(B).

In the original complaint, as noted above, the debtor sought only to rescind the deed of trust and to have the indebtedness, owed now to First Union, adjudicated as an unsecured dischargeable debt. In the proposed amended complaint, resorting to a "shotgun" approach, touching on every theory of recovery imaginable, the debtor seeks compensatory and punitive damages and has made a demand for a jury trial.

## III.

The United States Supreme Court, in its opinion in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), enunciated the following general standard, which is to be employed under Rule 15(a), Federal Rules of Civil Procedure:

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

83 S.Ct. at 230.

Having reviewed the circumstances surrounding the proposed motion to amend, the court is of the opinion that there has been no showing of undue delay, bad faith, or dilatory motive on the part of the movant. Because the court will permit Southern Mortgage and First Union to conduct additional discovery as a condition of allowing the amended complaint to be filed, the court envisions no prejudice to the opposing parties.

It is the practice of this court to allow a plaintiff to amend if the added causes of action would be viable in a new or "stand alone" complaint. As such, the court's preferred procedure is to allow the existing complaint to be amended, rather than to compel the plaintiff to dismiss and re-file or, alternatively, to file a concurrent complaint. The only caveat is whether a statute of limitations is implicated. Accordingly, the essential question to be answered is whether the causes of action, sought to be added, would be considered timely filed within the applicable statutes of limitations.

In her amended complaint, the debtor lists the following twelve counts:

1. Cancellation and removal of clouds from title.
2. Fraudulent conveyance.
3. Rescission and cancellation.
4. Injunctive relief.
5. Accounting.
6. Fraud, deceit, and misrepresentation.
7. Breach of contract.
8. Civil conspiracy.
9. Joint venture and vicarious liability.
10. Negligence.

11. Intentional, gross and/or negligent infliction of damages.

12. Federal TILA violations.

Counts one through eleven are state law causes of action which are governed by the three year "general" statute of limitations found in § 15–1–49, Miss.Code Ann. (1972). The pleadings reflect that the debtor refinanced her house on May 5, 1998. Therefore, the three year statute of limitations applicable to the state law causes of action expired on May 5, 2001. Since the statute of limitations for these causes of action had not run before the motion to amend was filed, the debtor's request to add these counts will be granted.

■ The statute of limitations, applicable to an action for damages pursuant to TILA, is found at 15 U.S.C. § 1640(e), which provides in part as follows:

Any action under this section may be brought in any United States District Court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e)

■ The occurrence of a TILA "violation," as determined by numerous courts, occurs at the moment the loan transaction is closed. Therefore, the period of limitations for affirmatively asserting a TILA cause of action, relating to the debtor's loan closing, would have ordinarily expired on May 5, 1999. However, the court is cognizant of the provisions of Rule 15(c)(2),

Federal Rules of Civil Procedure, which provides as follows:

(c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, . . .

Without question, the TILA purported violations, as set forth in the proposed amended complaint, occurred as a part of the same loan transaction that formed the basis of the debtor's original complaint. As such, the "relation back" effect of Rule 15(c)(2) is specifically applicable to this matter. The Fifth Circuit Court of Appeals has spoken to this issue on numerous occasions. See, for example, *Johansen v. E.I. Du Pont de Nemours & Co.*, 810 F.2d 1377 (5th Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987); *Federal Deposit Insurance Corporation v. Bennett*, 898 F.2d 477 (5th Cir.1990), and *Federal Deposit Insurance Corporation v. Conner*, 20 F.3d 1376 (5th Cir.1994). Therefore, the court is of the opinion that the debtor's motion for leave to file the amended complaint is well taken. Discovery, however, will be reopened relative to the new allegations.

### IV.

■ Having determined that the debtor's motion to file an amended complaint should be granted, the issue of the jury demand contained in the amended complaint must now be addressed.

The court is cognizant of the Supreme Court's decisions in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), *Atlas Roofing v. Occupational Safety and*

*Health Review Commission,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), *Tull v. U.S.,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), as well as, *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), particularly their implications on party's right to a jury trial. However, the most significant case concerning this issue is the Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg (In re Chase and Sanborn Corp.),* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), which deals explicitly with a party's right to a jury trial in a bankruptcy context.

In *Granfinanciera,* Nordberg, the bankruptcy trustee, filed a fraudulent conveyance cause of action against Granfinanciera, S.A., and Medex, Ltd., two Columbian entities. Both of the defendants demanded a trial by jury. The bankruptcy court denied the jury trial requests and after a bench trial entered a monetary judgment against both defendants on constructive fraud counts. The district court and the Eleventh Circuit affirmed, holding that actions to recover fraudulent conveyances are equitable in nature, even when money damages are sought. As such, they concluded that a jury trial was not appropriate.

Justice Brennan, writing for the majority, began his analysis with a discussion of whether the proceeding was equitable in nature or legal in nature. He concluded, after an exhaustive examination of the underpinnings of the cause of action, that an action to recover monetary damages is legal and not equitable. He added that Congress could not convert a legal claim to an equitable claim, avoiding the Seventh Amendment jury trial right, by labeling the cause of action a "core" bankruptcy proceeding.

The court then discussed whether the cause of action involved public rights as opposed to private rights. Justice Brennan indicated that the trial of a lawsuit involving purely private rights cannot be assigned by Congress to a non-Article III court. Previously, lawsuits involving private rights had been considered as causes of action solely between private citizens where the United States government was not a party. However, the court, in a back door approach, modified the earlier definition of private rights by expanding the definition of public rights, as follows:

> Congress, acting for a valid legislative purpose pursuant to its Article I powers, creates a private right that is so closely related into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.

The aforementioned language, loosely translated, means that public rights can involve the allowance and disallowance of claims in a bankruptcy case or the adjustment of the debtor-creditor relationship where the government is not a party to the proceeding.

Concluding the analysis, the court then said that since the defendants had not filed claims against the bankruptcy estate that the cause of action initiated by the trustee amounted only to a lawsuit affecting private rights. Thus, having concluded that the proceeding was essentially legal in nature, as well as, involving only private rights, the court said that the defendants were entitled to a jury trial which is guaranteed by the Seventh Amendment to the United States Constitution.

### V.

The court has closely examined the concluding paragraph of the debtor's amended complaint in order to determine whether the action is one based primarily in equity or in law. For reference purposes, the paragraph is reprinted in part as follows:

**WHEREFORE,** Joyce Annette Spence prays that this Honorable Court, after notice and hearing, will find and declare that

(a) her notice of recession referenced herein was valid and that the mortgage was void upon the lender's receipt of that notice;

(b) all documents evidencing the security interests held by Defendants in Plaintiff's home be canceled and all clouds arising from said documents be removed from Plaintiff's title;

(c) all deeds of trust obtained by fraud and all assignments thereof be set aside and declared null, void and of no effect;

(d) any and all instruments of indebtedness, deeds of trust or documents arising from these transactions be rescinded and/or canceled and any impairment of the Plaintiff's homestead exemption in the property resulting from any deed of trust and promissory note be removed;

(e) any and all instruments of indebtedness, deeds of trust or documents arising from the transactions are null, void and of no effect, or otherwise grant reformation thereof as equity may allow;

(f) this Court issue a preliminary injunction against Defendants and those in privity, active concert or participation with them be enjoined from assigning any interest they may have in Plaintiff's property, and further suspending Plaintiff's obligation to make any further payments to Defendants until this case can be set for trial and findings of fact and conclusions of law entered so as to permanently enjoin Defendants as set forth above;

(g) the Defendants shall forthwith provide an accounting of all monies paid to the various Defendants arising from these transactions, including but not lim-

ited to a copy of evidence of the payor and payee of each item on the loan closing statement and the source of the mortgage proceeds;

(h) the Plaintiff have judgment against the Defendants, jointly and severally, for such damages, compensatory and punitive, as equity may allow;

(i) the automatic stay provided by 11 U.S.C. § 362(a) not be modified or lifted as regard any party hereto;

(j) the Plaintiff have such other and further relief as this Court deems just and appropriate in the premises, including but not limited to $1,529.10 in closing costs, the pre-payment penalty of her previous mortgage, interest on said sums at 13.2% from and after June 12, 1998, the cost of the interest differential between her previous mortgage and the subject mortgage on [sic] $48,500.00, prejudgment and post-judgment interest from the date of judicial demand at the contractual rate as provided by § 75–17–7 of the **MISSISSIPPI CODE OF 1972** as amended, attorneys fees and such legal expenses reasonably and necessarily incurred;

(k) As an additional consequence of the Defendants' violation of the referenced laws, Plaintiff is entitled, pursuant to 15 U.S.C § 1640, to recover from the Defendants, jointly and severally, her actual damages, twice the amount of the finance charge in connection with the transaction, $2,000 for each violation of the 15 U.S.C. § 1631, et seq., an amount equal to the sum of all finance charges and fees paid by her, court costs and reasonable attorneys fees as determined by the court.

In subparagraphs (a) through (e), the debtor is attempting to remove a cloud on the title to her homestead property by seeking declaratory relief from this court to the effect that the deed of trust now

held by First Union is void. These subparagraphs are indicative of a cause of action based in equity.

Subparagraphs (f) and (g) respectively request a preliminary injunction and an accounting. These also are equitable avenues of redress.

In subparagraph (h), the debtor requests a judgment for compensatory and punitive damages in unspecified amounts. An action for damages is generally based in law. However, curiously, the debtor adds the phrase "as equity may allow" to the damage request.

In subparagraph (i), the debtor asks the court to refrain from lifting or otherwise modifying the automatic stay of § 362(a) of the Bankruptcy Code, which is a request for equitable relief.

In subparagraph (j), the debtor seeks the return of her loan closing costs of $1,529.10, as well as, the pre-payment penalty on her previous mortgage, plus all interest accrued on these sums. She seeks the interest differential between her two loans, as well as, attorneys' fees and expenses reasonably incurred. Although this paragraph could result in a money judgment against the defendants, it is, in actuality, an attempt by the debtor to recoup the interest differential, which will necessarily require a mathematical calculation, and the monies that she previously paid in closing her loan. This could best be described as a "mixed" remedy, but, because of the accounting related features, it is more closely grounded in equity than in law.

In subparagraph (k), the debtor seeks damages for the TILA disclosure violations. She specifically raises 15 U.S.C. § 1640, which under subpart (a), allows the recovery of actual damages in addition to certain enumerated civil penalties. While these claims are clearly based in law, they do not subjugate or render subordinate the other claims in the complaint. One part of the complaint should not convert the entire complaint, which largely seeks equitable relief, into a cause of action at law. A determination such as this would produce an aberrational result.

As a result of the foregoing analysis, the court is of the opinion that the plaintiff is not entitled to a jury trial as to her requests for relief set forth in subparagraphs (a) through (g), (i), and (j) in the amended complaint. These would all be considered equitable or non-jury issues. However, the plaintiff is entitled to a jury trial on the relief requested in subparagraph (k). At this point, the court is unable to determine whether the plaintiff is entitled to a jury trial on her unspecified request, set forth in subparagraph (h), for compensatory and punitive damages as "equity may allow."

In order to appropriately bring all of these issues into focus, the court will bifurcate the trial. Those issues which are clearly non-jury will be tried first. Those issues which are appropriate for a jury determination will then be tried subsequently. By that time, the potential jury issues should be more appropriately defined.

As to the jury issues, pursuant to 28 U.S.C. § 157(e), the parties are required to voluntarily consent to a jury trial being conducted by the bankruptcy court. Otherwise, the jury issues must be referred to the United States District Court for trial. The parties, therefore, are directed to advise the court within 30 days of the entry of this opinion as to whether they consent to the jury trial being conducted by the bankruptcy court. The execution of such a "procedural" consent will in no way prejudice the substantive position of Southern Mortgage or First Union that the plaintiff is not legally entitled to a jury trial, nor

will it be considered as a waiver of this defense.

In an abundance of precaution, the court is of the opinion that the parties should also advise this court as to whether they voluntarily consent to the bankruptcy judge hearing, determining, and entering appropriate final order and judgements in this proceeding subject to appellate review under 28 U.S.C. § 158, all as contemplated by 28 U.S.C. § 157(c)(2). The parties are likewise directed to advise the court within the aforementioned 30 day period from the date of the entry of this opinion as to whether they consent to this procedure.

An order will be entered accordingly.