# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2011

No. 09-31059

Lyle W. Cayce
Clerk

CASHMAN SCRAP & SALVAGE LLC

Plaintiff - Appellant - Appellee

v.

BOIS D'ARC ENERGY, INC, formerly known as Bois d'Arc Offshore Ltd.

Defendant - Appellant

OPE INC

Defendant - Appellee

v.

TRENDSETTER RESOURCES LLC

Defendant - Appellant - Appellee

TIMOTHY LEE

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-7068

No. 09-31059

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

PER CURIAM:[*]

This case presents a web of interconnected legal claims arising from a multi-party business deal gone awry. Following a bench trial, the district court awarded the disputed payments to the one party it found did not participate in and was not aware of any misconduct. Finding no error, we affirm essentially for the reasons given by the district court.

I

Cashman Scrap & Salvage, LLC ("Cashman") operates a fleet of barges and other vessels for use in marine construction projects. In early 2006, Cashman was looking to expand its inshore chartering business into offshore work as well. Cashman turned to third-party brokers to procure clients in exchange for a commission on any resulting contracts. One of those brokers was Trendsetter Resources, LLC ("Trendsetter"), a company wholly owned and operated by its sole employee, Timothy Lee.

The record reveals that broker agreements in the offshore construction industry do not always resemble those in industries such as real estate, where a fixed rate of commission is set out in advance. Instead, brokers such as Trendsetter often perform introductions without a formal agreement in place. If a contractor wishes to bid on a project it found through a broker, it then negotiates with the broker to determine an appropriate commission. The amount of the commission is added to the contractor's fees to arrive at the final bid amount. Because the broker's commission is built into the bid price, the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

company receiving the bid may not know the amount of commission being paid to the broker, or even that a commission is being paid at all.

Around the same time Cashman was looking to expand its business, Bois d'Arc Energy, Inc. ("Bois d'Arc") was planning major repairs to an offshore natural gas facility badly damaged by Hurricane Katrina. Bois d'Arc employee Richard Smiley began seeking an on-site project manager to oversee the construction and to coordinate the many vessels and service providers that would be required. A mutual acquaintance put Smiley in touch with Lee. After briefly touching base by phone, Lee followed up by email on May 25, 2006, to provide Smiley with his full contact information. This contact information identified Lee as "Managing Partner, Trendsetter Resources – Independent Broker for Cashman Barge & Equipment Co." Over the next month, Lee continued to assist Smiley with locating potential contractors and reviewing candidates for project manager. Smiley was apparently impressed with Lee's work, and in June 2006 he asked Lee himself to serve as project manager. Lee initially declined the position because Trendsetter did not have the proper insurance.

At the same time he was running Trendsetter, Lee was also employed by a second company, OPE Inc., which provides engineering and project management services for offshore construction projects. Lee's contract with OPE included a salary and a discretionary bonus, but did not provide a separate commission on projects he brought in for the company. OPE's policies specifically forbid its employees from holding an interest in outside businesses that compete with OPE. Lee informed OPE that he owned Trendsetter, but he falsely represented that Trendsetter's business was limited to acquiring oil and gas leases, which do not compete with OPE's services. Lee did not disclose to OPE that Trendsetter also brokers equipment for offshore construction projects, in direct competition with OPE.

No. 09-31059

Although Bois d'Arc was unable to hire Lee directly, it agreed to hire OPE as its project management company on the condition that OPE assign Lee as its project manager. With the project moving forward, Cashman decided to bid on contracts to supply barge spreads for the construction. Cashman determined it would need $15,000 per day for the task. Because Lee was the broker who first introduced Cashman to Bois d'Arc, Cashman contacted Lee to determine the commission to be added to the bid.

Acting as managing partner of Trendsetter, Lee advised Cashman to include a commission of $5000 per day, for a total bid price of $20,000 per day. Cashman also decided to bid on a contract to supply a materials barge, for which its total bid price was $5000 per day while in the field and $3500 per day while on standby, including a $500 per day commission to Lee. During these negotiations, Lee told Cashman that he was also serving as project manager, and he insisted that Cashman sign a confidentiality agreement that forbade it from discussing Trendsetter's commission with anyone, including Bois d'Arc and OPE as well as its own legal counsel, accountants, and auditors.

Acting as project manager for Bois d'Arc, Lee then received the bids from Cashman and bids from several competitors. The Cashman bids quoted the lowest price for each barge spread, and Lee officially awarded these contracts to Cashman. Lee did not disclose to his employer, OPE, or to the client he was acting for, Bois d'Arc, that he would receive a hefty commission on each contract.

In November 2006, near the end of construction, OPE discovered Lee's unauthorized broker fees on the Cashman contracts and on contracts with three other suppliers. OPE immediately fired Lee and notified both the FBI and Bois d'Arc of what it suspected to be illegal kickbacks. Bois d'Arc responded by withholding $632,500 from Cashman's final invoice, the portion of the total contract that covered Lee's commission.

4

No. 09-31059

Cashman subsequently filed this lawsuit seeking to recover the unpaid amount from Bois d'Arc and seeking disgorgement of its payments to Trendsetter. Bois d'Arc responded that it should be excused from the contract due to fraud and that, in the alternative, it is entitled to indemnification from OPE. OPE, in turn, filed claims for indemnity and unjust enrichment against Trendsetter and Lee.

II

The district court conducted a three-day bench trial, finding that Bois d'Arc knew or should have known of Lee's dual role, and therefore failed to prove fraud sufficient to void its contract with Cashman and is not entitled to indemnification from OPE. It likewise found that Cashman was also aware of Lee's dual capacity and that the contract to pay commission to Trendsetter should be enforced.

The district court further held that, by taking an unauthorized commission, Lee and Trendsetter were unjustly enriched at the expense of OPE. In reaching this conclusion, the district court held that it was appropriate under Louisiana law to pierce the corporate veil because Lee acted as the alter ego of the corporation and used Trendsetter to practice fraud or deceit.

In a subsequent order, the district court held that Cashman had failed to establish a basis for its breach of fiduciary duty claim against Trendsetter and Lee. All parties held liable now appeal the judgments against them.

III

We review each of the district court's rulings in turn, mindful of the appropriate standards of review. This court reviews findings of fact for clear

5

No. 09-31059

error and conclusions of law de novo.[1]  We will not find clear error unless we have "a definite and firm conviction that a mistake has been committed."[2]

A

Bois d'Arc appeals the district court's ruling that its contract with Cashman was not void due to fraud and was not entitled to indemnification from OPE.   The district court held that Bois d'Arc's claims of fraud and misrepresentation failed because its employee, Richard Smiley, knew or should have known that Lee also served as a broker for Cashman,[3] a finding of fact that is not clearly erroneous.   Lee identified himself to Smiley in his May 25 introductory email as an "Independent Broker for Cashman Barge & Equipment Co.," and Smiley admitted at trial that "I see some things that should have run up a red flag . . . .   I should have been aware of what was going on."   Likewise, the indemnification claim must fail because Bois d'Arc specifically instructed OPE to assign Lee as project manager despite its knowledge of Lee's dual roles. Bois d'Arc has failed to demonstrate a legally actionable harm and we affirm both rulings.

---

[1] *E.g.*, *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009).

[2] *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370 (5th Cir. 2000).  As our past cases explain, "[a] finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony."  *Bd. of Trs. New Orleans Employers Int'l Longshoremen's Ass'n v. Gabriel, Roeder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008).

[3] To establish fraud or misrepresentation, a party must show that (1) there was a material misrepresentation or nondisclosure, (2) the party making the misrepresentation knew it was false and intended another party to rely on it, and (3) the other party reasonably relied on the misrepresentation to its detriment.  *See, e.g.*, *Black Gold Marine, Inc. v. Jackson Marine Co.*, 759 F.2d 466, 470 (5th Cir. 1985); *South Hampton Co. v. Stinnes Corp.*, 733 F.2d 1108, 1120 (5th Cir. 1984).

No. 09-31059

B

Trendsetter and Lee appeal the district court's ruling holding that they were unjustly enriched.[4]   Assuming for the moment that we may regard Trendsetter and Lee as interchangeable, there can be little question that an unjust enrichment has occurred.[5]  Under the terms of his employment with OPE, Lee was not authorized to receive a personal commission, and any commission that went to Trendsetter should instead have been paid to OPE.  Although Lee insists that he should be compensated for brokering the deal between Cashman and Bois d'Arc, he is entitled only to the compensation set out in his employment agreement—his salary and discretionary bonus—not to an unauthorized commission.[6]

---

[4] Under the common law, "[a]ssumpsit will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund." *Bayne v. United States*, 93 U.S. 642, 643 (1876); *United States v. Dean Van Lines, Inc.*, 531 F.2d 289, 291 (5th Cir. 1976).  Under Louisiana law, a claim of unjust enrichment requires an enrichment of the defendant, an impoverishment of the plaintiff, a connection between the enrichment and the impoverishment, an absence of justification, and a lack of any other remedy at law. *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1993).

[5] We easily dispose of Trendsetter and Lee's argument that OPE never asserted a claim for unjust enrichment.  Although OPE's initial cross-claim was limited to indemnity, the district court's pretrial order identified unjust enrichment both as a contested issue of fact and as a contested issue of law. "Once the pretrial order is entered, it controls the course and scope of the proceedings," not the complaint. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998); *see also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007); *Curtis v. Loether*, 415 U.S. 189, 190 n.1 (1974).

[6] On appeal, Lee argues for the first time that OPE is precluded from bringing a claim for unjust enrichment in litigation because Lee and OPE are currently involved in a separate arbitration proceeding that may address this issue.  This argument has been waived.  Lee did not submit a demand for arbitration, he did not enter evidence of the arbitration at trial, and he has not supplied us with a copy of the petition for arbitration or any other document enabling us to discern the scope of the issues being decided in arbitration.  Given this dearth of evidence in the record, we must also decline Lee's invitation to take judicial notice of the arbitration proceedings.

No. 09-31059

In reaching this conclusion, the district court pierced Trendsetter's corporate veil, holding Lee personally responsible for the actions of the corporation and imputing to the corporation Lee's duties to OPE. The district court and the parties addressed this issue under Louisiana law. We review the decision to pierce the corporate veil for clear error.[7]

The district court found that Lee was the sole shareholder and sole employee of Trendsetter and has engaged in deceitful action. Lee and Trendsetter argue that Louisiana law does not permit a court to pierce the corporate veil without an express finding of fraud. But Louisiana courts have held that "fraud *or deceit*" can justify piercing the corporate veil in an alter-ego case,[8] and the district court expressly found that Lee engaged in "deceitful actions." Even were this not the case, the district court's opinion may fairly be read as finding fraud.

Lee and Trendsetter alternatively cite *Riggins v. Dixie Shoring Co.*[9] to argue that even when an individual is the sole shareholder of a corporation, piercing the corporate veil requires a court to apply a muti-factor test that the district court failed to consider. This argument misreads Louisiana law. The multi-factor test applies only "*absent fraud* on the part of the shareholder."[10] In cases where there is fraud or deceit, "'[i]t is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such

---

[7] *Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406, 409 (5th Cir. 1998); *accord Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 385 (5th Cir. 2000) ("The question of whether to pierce the corporate veil is primarily one of fact and therefore a very deferential standard of review applies.").

[8] *Kingsman Enters., Inc. v. Bakerfield Elec. Co.*, 339 So. 2d 1280, 1282 (La. Ct. App. 1976) (emphasis added).

[9] 590 So. 2d 1164, 1168 (La. 1991).

[10] *Kingsman*, 339 So. 2d at 1282 (emphasis added).

control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility.'"[11]

Finally, contrary to Trendsetter's argument that it owed no duty to OPE, when a corporation acts as the alter ego of an individual, a court may "reverse pierce the corporate veil" to impute the individual's actions to the corporation.[12] Accordingly, the district court correctly held that Trendsetter is liable to OPE for unjust enrichment and that Lee may be held personally liable as the corporation's alter ego.

C

Lastly, Cashman appeals the district court's ruling that it is not entitled to disgorgement of its payments to Trendsetter. Cashman essentially argues that, notwithstanding the narrow terms of the brokerage agreement, Trendsetter was actually "more than just a middleman" and therefore assumed a fiduciary duty to Cashman.[13] It contends that Trendsetter breached this fiduciary duty by failing to maximize the amount of Cashman's contracts and by directing certain other business to clients other than Cashman.

The district court held that Cashman failed to establish that Trendsetter promised to do more than introduce Cashman to potential business. Cashman points to four pieces of evidence. First, a Cashman executive testified that he had believed Lee would bring knowledge and expertise on how to maximize its day rates. But he offered no evidence that Lee or Trendsetter ever promised this. Second, Cashman authorized Trendsetter to submit final quotes on its

---

[11] *Id.* (quoting *Keller v. Haas*, 12 So. 2d 238, 240 (La. 1943)).

[12] *See Chao v. Occupational Safety & Health Review Comm'n*, 401 F.3d 355, 364 (5th Cir. 2005) (citing *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 244 (5th Cir. 1990)).

[13] Cashman does not appeal the district court's ruling that its agreement to pay commission to Trendsetter is an enforceable contract.

behalf. This is not necessarily inconsistent with a mere brokerage agreement. Third, the amount of Cashman's payments to Trendsetter was greater than a typical "finder's fee." Yet the amount of these fees can vary from contract to contract. Finally, Lee occasionally advertised Trendsetter is available to serve as both "Independent Broker and Technical Consultant." At the same time, he did not specifically advertise that Trendsetter was retained as technical consultant in its work for Cashman.

This evidence fails to demonstrate clear error in the district court's finding that Trendsetter agreed only to serve in a limited capacity as Cashman's broker.[14] To the contrary, Trendsetter points out that it provided brokerage services to several competing barge suppliers and could not possibly carry out a fiduciary duty to multiple clients at once.

IV

No appellant has shown clear error in the district court's findings of fact, and we find no error in its conclusions of law. The decision of the district court is AFFIRMED.

---

[14] We need not reach the district court's alternative holding that even if Trendsetter breached a fiduciary duty, Cashman is unable to show any damages.